(No. 12838.—Judgment affirmed.)

The Atchison, Topeka and Santa Fe Railway Company, Plaintiff in Error, *vs.* The Industrial Commission *et al.*—(Maria Kiley, Admx. Defendant in Error.)

*Opinion filed December 17, 1919.*

1. Workmen's compensation—*when proof does not show that railroad watchman was engaged in inter-State commerce.* Where a night watchman in a railroad yard is killed by an engine of another company while he was standing on the latter's track east of his employer's track, mere proof that a regular inter-State freight train of his employer, which it was a particular part of his duty to watch to prevent theft from the cars, was pulling out of the yard at the time on the track west of the one where he was killed, and that he had been directed to always be on the east side of that train, does not show that he was engaged in inter-State commerce at the time he was killed.

2. Same—*burden is on employer to prove employee was engaged in inter-State commerce.* Where some of an injured employee's duties were connected with inter-State commerce and some of them were not, his employer, if he seeks to avoid liability under the State Compensation act, has the burden of proving that the employee was engaged in inter-State commerce at the time of injury.

Writ of Error to the Circuit Court of Cook county; the Hon. Oscar M. Torrison, Judge, presiding.

Homer W. Davis, John R. Ong, and Sloane Turgeon, for plaintiff in error.

Francis E. Croarkin, for defendant in error.

Mr. Justice Farmer delivered the opinion of the court:

The circuit court of Cook county approved an award made by the Industrial Commission under the Workmen's Compensation act in favor of Maria Kiley, the widow and administratrix of the estate of Roger Kiley, deceased, and certified the case was one proper to be reviewed by this court. The record is therefore brought up for review by writ of error.

Roger Kiley was employed by the Atchison, Topeka and Santa Fe Railway Company as night watchman in its Corwith yards, which extended from Thirty-eighth street and Central Park avenue, in Chicago, south to Forty-seventh street and Archer avenue,—a distance of a little more than one mile. He was commissioned also by the city of Chicago with authority to guard and protect railroad property and freight in or adjacent to the yards. He was specially charged by plaintiff in error to watch each night its interState freight train No. 33, which was due to leave the yards at 10:50 P. M., to make sure the seals were intact and prevent thieves who might be on the inside of cars from throwing out merchandise to be carried away by confederates on the outside. It appears that on some occasions thieves got into cars of that train and as it was moving out of the yards at a point near Thirty-ninth street, goods were thrown out of the cars at the end of a fence on the east side of the yards, which extended from Thirty-ninth street south about half a mile, separating the yards from the property of the Crane Company. West of the yards is open prairie and on the east is the city, and the thieves would escape in that direction. Deceased's instructions were to be on the east side of the train, between the train and the fence. The easterly track,—the one next to the fence,—was leased to the Illinois Northern Railroad Company and was used by it. On the night of the accident, August 22, 1917, at

about 11:45 P. M., an engine belonging to the Illinois Northern Railroad Company was backing south on said track at a speed of six or seven miles per hour. The conductor was standing on the foot-board of the tender.. On the track immediately west of the track that engine was on, the plaintiff in error's through inter-State freight train No. 33 was pulling out of the yards, north. The night was dark and foggy and the cylinder cocks of the engine were open and steam was escaping. It was not possible to see more than five or six feet. After the Illinois Northern engine had passed the Santa Fe engine about two car lengths, they going in opposite directions, the conductor on the Illinois Northern engine saw deceased standing in the middle of the track his engine was on. He shouted to the engineer to stop, threw his arm around deceased, pulling him out of the middle of the track and throwing his body against the board fence, but the engine ran over him and cut off both his legs, so that he died. The accident occurred about 140 feet south of Thirty-eighth street and a few feet south of the end of the board fence. All the cars in train No. 33 were loaded with merchandise destined for Kansas City, Missouri, and points west of there. Deceased carried a flash-light and a revolver. These were found beside him after the accident.

The only question raised on this record is whether deceased at the time of the accident was engaged in inter-State commerce. It is not claimed that all his duties were such as to bring him within the class of employees engaged in inter-State commerce, but it is contended he was so engaged while watching train No. 33 leave the yards to discover if there were any thieves in any of the cars, and that the legitimate inference to be drawn from the proof is that he was engaged in the performance of that duty when struck by the engine. He had nothing to do with the movement of trains or with the instrumentalities connected with their movement, but if watching train No. 33 for thieves and to

observe whether the cars were sealed as the train moved out of the yards brought him at the time within the class of employees engaged in inter-State commerce, there is no proof that he was so engaged unless it is to be inferred from the proof that the injury occurred at or near the place he would be while engaged in the performance of that duty. But that proof was not inconsistent with his being in the performance of his general duties of watchman, which required him to patrol the yards.

Where part of an employee's duties are connected with inter-State commerce and part of them are not, if the employer seeks to avoid liability under the Workmen's Compensation act on the ground the employee was engaged in inter-State commerce at the time of his injury, and the liability, if any, is under the Federal Employers' Liability act, the burden is on the employer to show that the employee at the time of his injury was engaged in inter-State commerce. In *Illinois Central Railroad Co.* v. *Industrial Board,* 284 Ill. 267, it was said: "The plaintiff in error was engaged both in inter-State and intra-State commerce, and to relieve itself of its obligation to provide and pay compensation under the Workmen's Compensation act it was incumbent upon it to show the fact that the work being done at the time of the injury was in inter-State commerce." The railroad company in that case failed to show its employee was injured while engaged in inter-State commerce and an award under the Workmen's Compensation act was affirmed. The same rule was announced in *Chicago, Rock Island and Pacific Railway Co.* v. *Industrial Board,* 273 Ill. 528.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*