Chester Nelson, Appellee, v. Evanston Railway Company, Appellant.

Gen. No. 34,988.

Opinion filed March 23, 1931.

McCulloch & McCulloch, for appellant; Grover C. McLaren and Louis C. Murtaugh, of counsel.

Earl J. Walker, for appellee.

Mr. Justice McSurely delivered the opinion of the court.

Plaintiff brought suit to recover damages for personal injuries against the Evanston Railway Company (hereafter called defendant) and the City of Evanston and had a verdict against them jointly for $1,500. While a motion for new trial was pending the City of Evanston paid the plaintiff $500, receiving a covenant not to sue and it was dismissed. Plaintiff remitted $500 from the verdict and judgment was entered against the Railway Company, the remaining defendant, for $1,000, from which it appeals.

The accident happened about 8:30 o'clock in the evening of January 2, 1929, at the intersection of Central Street and Ashland Avenue in Evanston. Defendant operates street cars on a double track on Central Street, which runs east and west. Plaintiff was approaching Central Street from the south on the west side of Ashland Avenue and was struck by an eastbound street car at the southwest corner of the intersection. Plaintiff's theory was that the City of Evanston had negligently built a piece of sidewalk north extending across the parkway to the curb on Central Street on such a decline that it was unsafe for pedestrians and that the Railway Company negligently operated its car both as to speed and in not stopping in time to avoid a collision with the plaintiff. Defendant asserts it was guilty of no negligence and that plaintiff's injury resulted from his own negligence.

On the night in question the streets and walks were covered with ice and there was about half an inch of snow covering the ice. A street car had been derailed near the west end of the line on Central Street, blocking traffic and causing delay, so that the cars were about 20 minutes behind schedule. The car involved in the accident started eastward more than 20 minutes

late, followed by the other cars. It picked up passengers for a time and when it had a full load the conductor, noticing other cars behind, directed the motorman to skip stops so as to divide the waiting passengers. The motorman, complying with this direction, passed the street west of Ashland and as he approached Ashland he noticed a woman waiting for the car and sounded the gong to indicate that his car would not stop. He also noticed the plaintiff running on the west side of Ashland approaching Central Street.

Plaintiff was a student at Northwestern University. He had been calling on a friend, Miss Kathryn Kean, who lived on Ashland about half a block south of Central. Another couple was in the party. The four young people concluded that they would go to a picture show and for this purpose walked northward on the west side of Ashland, intending to take an eastbound street car on Central. There was a vacant lot at the southwest corner of the street intersection. When the party had passed the last house on the block and was about 80 feet south of Central, they saw the eastbound car at the next corner west; when it was about the middle of the block plaintiff left the party and, as he said, "trotted" towards Central in order to have the car stop at Ashland. Between the sidewalk on Central Street and the south curb of the street is a space of about 7 feet which is constructed on a decline towards the street of about 10 inches. The distance from the north edge of this decline to the south rail of the eastbound tracks is 12 feet. Plaintiff testified that, not observing this slope, he continued running, but because of his momentum and the slippery condition of the street and the decline could not stop and ran into the street car at its forward southeast corner and was thrown back against the curb, breaking his leg.

Plaintiff testified that when he reached the decline he was sliding so fast that, if he had fallen, he would

have slid clear under the street car, but that he kept to his feet but was still sliding when he struck the car; that he noticed the street car coming all the way from the street to the west and he knew it was approaching Ashland going fast. He testified that he had frequently visited his friend, Miss Kean, at her home on Ashland Avenue and had boarded the street car at this point about 18 times and was familiar with the surroundings. He had walked across this particular piece of sidewalk at least nine times. At this time he did not pay any particular attention to the sidewalk or decline. In answer to the question as to whether he was going so fast that he could not stop, plaintiff replied that, when he hit the decline he felt reasonably sure that he could stop any moment; that when he started to slide he braced his feet and tried to stop but could obtain no footing on the smooth ice.

The motorman testified that it was icy all around and very slippery; that he was traveling about 15 miles an hour. A witness named Bokelkamp, who was following the street car in his automobile, gave his opinion that the street car was going about 30 miles an hour, although the defendant's engineer testified that the street car was geared to go 25 or 27 miles an hour at the highest speed on a level track under the best conditions after a long start. Bokelkamp says that before the accident happened he did not pay any attention to the car speeds; that he himself was traveling at a safe rate of speed; that when he saw the plaintiff start to slide down the decline the street car was just "getting to the lady standing there"; that she was standing where the rear steps customarily stop; this would be less than a car length west of the crosswalk and the length of the car is 30 feet.

Plaintiff argues that it was negligence on the part of the motorman in failing to stop the car after he saw that plaintiff was sliding down the decline towards the tracks. If plaintiff lost control of himself and started to slide down when the car was only 30 feet

west of the crosswalk and going at the rate of 30 miles or even at 15 miles an hour, in order to have avoided colliding with plaintiff it would have been necessary for the motorman to stop the car almost instantly, which was not possible. Plaintiff testified that when he got to the curb or 12 feet from the street car track, the street car was two or three car-lengths away. Even at this distance it would have been almost if not quite impossible to stop before the collision with plaintiff. The witnesses testified that the interval of time between the plaintiff reaching the decline and striking the car was momentary. It follows from these and other circumstances that the motorman could not have foreseen any peril to the plaintiff until he reached the decline or very near to it, and that from that time until plaintiff struck the street car the motorman could not have stopped the car in time to avoid the accident. Negligence in the operation of the car was not proven.

We are also of the opinion that plaintiff was guilty of contributory negligence. Knowing that the ground was slippery, he moved rapidly to catch the car without considering the slippery walk or decline, and when he struck the decline he was unable to stop on its slippery surface and ran into the car. The car was in plain view of plaintiff and he knew it was coming fast, but his momentum was so great that it carried him down the decline 7 feet and over a 5-inch curb and a further distance of 12 feet which inclined upward to the car line. The conclusion is inevitable that it was plaintiff's own carelessness in going fast on a slippery street, where the conditions were such that in the exercise of due care he should have known that he was likely to lose control of himself as he approached the track of the oncoming street car.

Cases involving somewhat similar circumstances are *Rack v. Chicago City Ry. Co.,* 173 Ill. 289; *Morgan v. New York Cent. R. Co.,* 327 Ill. 339; *Lovenguth v. City*

of *Bloomington,* 71 Ill. 238; *Cole v. City of East St. Louis,* 158 Ill. App. 494; *Welch v. Chicago City Ry. Co.,* 208 Ill. App. 161; *Van Meter v. Chicago Rys. Co.,* 240 Ill. App. 371. In our opinion all reasonable minds would agree that the conduct of plaintiff under the circumstances was negligence resulting in the accident. The judgment will, therefore, be reversed with a finding of fact.

*Reversed with a finding of fact.*

MATCHETT, P. J., and O'CONNOR, J., concur.

Finding of fact: We find that the accident in question with resulting injuries to plaintiff was caused by his own negligent conduct directly contributing thereto.