John F. Cahill, Administrator of Estate of James Burke, Deceased, Appellee, v. Walter J. Cummings and Daniel C. Green, Receivers, etc., et al., Trading as Chicago Surface Lines, Appellants.

Gen. No. 42,369.

Heard in the third division of this court for the first district at the October term, 1942. ■ Opinion filed April 26, 1944. Rehearing denied May 12, 1944.

FRANK L. KRIETE, CHARLES E. GREEN and ARTHUR J. DONOVAN, all of Chicago, for appellants; WILLIAM J. FLAHERTY, of Chicago, of counsel.

BLACK & BEERMANN and WILLIAM J. TERRELL, all of Chicago, for appellee; BENJ. H. BLACK, of Chicago, of counsel.

Mr. Justice Kiley delivered the opinion of the court.

This is an action commenced July 13, 1939 under the Injuries Act, ch. 70, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 38.01 *et seq.*], arising from the death of James Burke. Verdict and judgment were for plaintiff in the amount of $2,500. Defendants appeal.

On April 26, 1939, decedent while going east on Washington Boulevard, was crossing defendants' southbound tracks in Paulina street, Chicago, when struck by defendants' southbound street car. He died three days later. The verdict was upon complaint that while decedent was exercising due care, defendants negligently operated their car in that they did not have it under proper control and negligently operated it while approaching the intersection. Defendants made issue on the essential elements and charged that decedent's death was due to his negligence. Defendants argue that decedent was guilty of such negligence as a matter of law that plaintiff cannot recover; and that, as a matter of law, no negligence was shown on their part.

Favorable evidence for plaintiff is that the motorman first saw decedent when the car was about 125 feet north of the crosswalk and decedent 5 or 6 feet east of the west curb; that decedent was then looking north; that the lights about that time changed in the car's favor and it increased its speed south while decedent was proceeding east and struck him as he was about to clear the southbound tracks. This evidence, with proper inferences most strongly in plaintiff's favor, is sufficient basis for submitting the case to the jury, unless for some reason the sum of the evidence and inferences has been held to constitute lack of due care. Defendants cite *Letush v. New York Cent. R.*, 267 Ill. App. 526 in support of their theory that decedent having looked at the car, must have seen it, and should have known a car going 8 miles per hour requires about

30 feet and one going 14 miles per hour about 60 feet for stopping. The case is not applicable, for the jury may have found that the motorman, when he saw the lights against him and the decedent in the act of crossing, should have reduced the speed of the car to bring it under control so that decedent could cross in safety. Since decedent had the green light and was well into the intersection and saw the car more than 125 feet away, it would seem that he would be in the exercise of due care if he devoted his attention more directly to other factors necessary to his crossing. There must be some advantage to traffic control lights, with the green light as a guide to one's conduct or else pedestrians may well become extinct. Our Motor Vehicle Law, ch. 95½, Art. III, par. 129, subpar. 1, Ill. Rev. Stats. 1941 [Jones Ill. Stats. Ann. 85.161], provides such an advantage. They rely strongly upon the sounding of the gong by the motorman and his best efforts to stop the car. Favorable inferences might be that since decedent was lawfully in the intersection, the clanging gong and onrushing car served only to confuse him. Defendants say that even if decedent had the green light and the right of way, a red light cannot stop a street car and decedent must have seen the car was too close and coming at such a speed, it was impossible to stop, whether traffic control lights were favorable or unfavorable. We have already discussed one phase of this contention. As to the other phase— the pedestrian has an obligation to use due care commensurate with the danger that confronts him, but he cannot adjust his conduct to deal with disregard of traffic laws. The matter of traffic control and rights of way is not a case of survival of the strongest or swiftest.

Defendants in arguing that decedent was guilty of negligence as a matter of law, say that under *Russell v. Richardson*, 308 Ill. App. 11, the question of due care is a separate and distinct question from any claim

of defendants' negligence. We think that, while it is a separate question, due care cannot always be determined without reference to defendant's conduct. They say that decedent, having looked north when the car was about 125 feet away, was bound to see the car bearing down upon him and should have realized the danger and should not have attempted to cross in front of it. We hold that the jury would have been justified in concluding that plaintiff had a right to cross in safety, not because a pedestrian may rely absolutely upon the efficacy of traffic lights, but because the motorman had ample opportunity to avoid the accident. To sustain their contention that decedent was negligent, they rely upon *Russell v. Richardson,* 308 Ill. App. 11; *Rajek v. Cummings,* 314 Ill. App. 465; *Mortell v. Richardson,* 285 Ill. App. 586. The facts in those cases are different from those in the case before us; there were not traffic control lights involved in any of them and, in the *Russell case,* the court found that the car tracks constituted a dangerous place, under the circumstances there. In the *Rajek case* the motorman did not see the decedent before the accident, and in the *Mortell case* the court found the decedent took a chance in crossing in front of the approaching car. We cannot hold that decedent, under the circumstances here should be considered as having taken a chance. Defendants cite *Hooper v. Corliss,* 146 Wash. 50, 261 Pac. 645, for a rule which we think supports our view, that is that neither the pedestrian nor vehicle has the absolute right-of-way, but that the term right-of-way is relative and the right must be exercised prudently in the light of existing conditions. It is our conclusion that decedent was not guilty of contributory negligence as a matter of law.

*Chicago Union Traction Co. v. Browdy,* 206 Ill. 615, is cited by defendants for the rule that their servant must have had an opportunity to become conscious to the duty where the alleged negligence consists of an

omission of duty suddenly and unexpectedly arising; and have had a reasonable opportunity to perform the duty. That rule has no application, for the jury may well have believed that the motorman had ample opportunity in circumstances which were not sudden or unexpected. The motorman says he increased his speed when the lights changed and, since he saw at that time decedent was lawfully in the intersection, we cannot say he did everything possible to avoid the accident. His conduct is sought to be justified on the strained principle that taxpayers riding the street cars are entitled to reasonably swift traffic. Human lives cannot be sacrificed needlessly on any such theory. Defendants argue their case as though it were confined to the area between the tracks. We think their obligation under the circumstances here extended to the intersection. We believe, therefore, there is no merit to defendants' contention that it was not guilty of negligence as a matter of law.

Defendants contend that the clear weight of the evidence shows decedent was guilty of contributory negligence and that the traffic lights changed before he undertook to cross the street car tracks and at a time when the car was too close to be stopped, although the motorman did everything possible under the circumstances to avoid the accident. There were four occurrence witnesses, one of whom, Mattigan, an employee of defendants, we consider unreliable. A pedestrian testified that the lights favored decedent when he started across the intersection, and that he was almost across the tracks when the traffic light changed and the car speeded up and struck him. It is undisputed that the east side of the car struck decedent. The driver of an automobile westbound on Washington Boulevard said the light turned red against him as he came to Paulina street and that as he came to a stop, he looked and saw the accident. This evidence corroborates the pedestrian witness. The motorman testified he first

noticed decedent when the car was about 125 feet north of the crosswalk and that the latter was then 5 or 6 feet east of the west curb of Paulina street and that the lights then changed in favor of the motorman. He says that decedent faced him at first, and when the lights changed and the speed of the car increased to 14 miles an hour, decedent turned his back as though returning to the curb and, when the car was about 10 feet away, broke into a "dead run" in an easterly and southeasterly direction. It is clear from this evidence that the jury would be justified in finding that the lights favored decedent until he was well into the intersection, if not partially across the tracks; and in finding that the motorman was negligent in increasing the speed of the car and ringing the bell under the circumstances, and in failing to bring his car under control when he first observed decedent with the light in his favor several feet in the intersection, so that decedent could proceed out of danger.

Decedent was 62 years of age and a painter and decorator who had done little work in his trade for two years prior to his death. His income seems to have been rather meagre from his work as a handyman or janitor in a rooming house, and he and his wife from whom he was separated had been on relief and his average contribution for the support of his two children was about $10 a week. For these reasons defendants say that the allowance of $2,500 as damages was excessive. We believe that the jury could, reasonably, have found that the increase in demand for tradesmen of all kinds since decedent's death, would have served to bring him back to his trade and have increased his income. We find, accordingly, that the judgment is not excessive. This conclusion because of our views on the question of liability disposes of the defendants' further complaint of the inflammatory and prejudicial arguments of decedent's counsel.

Finally defendants contend that the court committed reversible error in giving plaintiff's instruction, as follows:

"31. The court instructs the jury that if they believe from the evidence that on the 26th day of April, 1939, James Burke came to his death while in the exercise of ordinary care for his own safety, in the manner and by the means set forth in the Complaint filed herein, and if the jury further believe from the evidence that the death of said James Burke was caused by the negligence of the defendant company, as charged in the complaint; and if the jury further believe from the evidence that the said James Burke left him surviving, a widow and minor children, as charged in the Complaint, and that such widow and minor children by the death of the said James Burke have been and are deprived of their means of support, then, in law, the plaintiff is entitled to recover."

They say it directs a verdict and assumes defendants' negligence. That instruction is substantially the same as the plaintiff's sole instruction in *Economy Light Co. v. Stephen*, 187 Ill. 137. Defendants say the objection made here was not raised there. The objections there raised to the instruction were that it based the right to recovery on plaintiff's financial condition, and was erroneous on the question of the measure of damages. The court held the objections untenable and said:

"It simply tells the jury that if they find the facts to be as therein stated the plaintiff is entitled to recover."

And later:

"It may be that this single instruction does not, of itself, fully instruct the jury as to every principle of law applicable to the case; but the question here is, whether, standing alone, it is erroneous in its an-

nouncement of the rules of law applicable to the case or calculated to mislead the jury to the prejudice of the defendant.''

It then said that if other necessary instructions were not given, it was defendant's fault and it approved the action of the Appellate Court, holding there was no reversible error in giving the instruction. Defendants' instructions No. 13, 14, 15, 17, 19, 21, 27, 28 and 29 relate to the proof required to establish its negligence and several of them were peremptory. We believe plaintiff's instruction under consideration was peremptory and carefully read, an assumption of defendants' negligence may be seen. The matter of instructions is difficult. Here plaintiff's attorneys used in substance an instruction approved by an Appellate and the Supreme Court. Not unmindful of the clear rule regarding erroneous peremptory instructions (*Grifenhan v. Chicago Rys. Co.,* 290 Ill. 590; *Krieger v. Aurora, E. & C. R. Co.,* 242 Ill. 544), we think that under the circumstances here and in view of the defendants' instructions, that a grave injustice would be done plaintiff by reversing the judgment on that instruction.

For the reasons herein given the judgment of the circuit court is hereby affirmed.

*Judgment affirmed.*

HEBEL, P.J., and BURKE, J., concur.