Virginia Lobravico, Individually and as Administrator of the Estate of Roy D. Lobravico, Deceased, Plaintiff-Appellee, v. Checker Taxi Company, Inc., a Corporation, and Juan Berrios, Defendants-Appellants.

Gen. No. 51,112.

First District, Second Division.

May 16, 1967.

Jesmer and Harris, of Chicago (Jay A. Canel, of counsel), for appellants.

Philip H. Corboy, James P. Chapman and James T. Demos, of Chicago, for appellee.

MR. PRESIDING JUSTICE LYONS delivered the opinion of the court.

This is an appeal from separate judgments of $25,000 and $1,424 entered pursuant to two respective counts of a wrongful death action. The judgments were entered by the court below sitting without a jury against the defendants-appellants, Checker Taxi Company, Inc., and Juan Berrios. After entry of said judgments, defendants made motions to set aside and vacate the judgments and

enter judgment in their favor, or alternatively, to grant a new trial, both of which were denied, and from which this appeal is taken.

No questions are raised on this appeal relative to the pleadings. It is defendants' sole theory on appeal that a reversal is required because of plaintiff's failure to prove freedom from contributory negligence by the decedent. Correspondingly, defendants contend that the court below erred in disregarding the testimony of Jane Swett, the only eyewitness to the actual occurrence.

It is plaintiff's theory of the case (1) that the question of contributory negligence is one of fact, not of law, and the trial judge's determination of the issue was not contrary to the manifest weight of the evidence, and (2) that Jane Swett's testimony was properly discredited by the trial judge, it having been contradicted on several material points by other credible testimony.

The occurrence which gave rise to this action was a car-pedestrian collision in the north crosswalk of the intersection of Erie Street and Fairbanks Court in the City of Chicago. (Erie Street runs east-west, and Fairbanks runs north-south.) The uncontested portions of the testimony adduced at trial showed that the decedent, Roy D. Lobravico, when last seen by his wife on the morning of the incident, June 14, 1961, was in good state of physical health and mental alertness. He was 50 years old, five feet, seven inches tall, and possessed good eyesight and hearing. Decedent was a father and responsible provider for his household. He generally performed the ordinary tasks of a man caring for his family and home. On the day in question, decedent left his place of employment at about 4:30 p. m. He had been a chief X-ray technician for about 27 years, and had performed his tasks that day in the customary fashion. It was daylight, the streets were dry and the visibility good. The traffic in the vicinity was categorized as "light." De-

cedent walked in a westerly direction on the north side of Erie Street.

The intersection he approached was that of Erie and Fairbanks where there were no buildings, foliage, or the like which would have obstructed the view of his approach. Fairbanks Court, at this intersection, is unencumbered by any traffic control signals. Traffic on Erie Street, however, is obliged to honor a stop sign. The maximum speed limit on Fairbanks Court was 30 miles per hour. Permissible crosswalks were indicated at each corner by painted white lines.

Decedent, as he crossed Fairbanks Court, was within the provided crosswalk margins. He entered Fairbanks Court from the north-east corner of the intersection. While so crossing, a collision took place between decedent and defendant-Checker's vehicle which was then being driven by defendant-Berrios. The vehicle had been traveling in a northerly direction on Fairbanks Court. Two days subsequent, decedent expired as a result of the injuries thereby sustained. This wrongful death action was thereafter instituted by his surviving spouse, Virginia, as administratrix of his estate. The circumstances surrounding the events which immediately preceded and followed the actual impact, as they pertain to the single question of contributory negligence, are much controverted and will be hereafter set out in detail.

Defendant-Berrios was ruled incompetent to testify under the Dead Man's Statute when called as a witness. The only witness who testified in defendants' behalf was Jane P. Swett, a then rear seat passenger in the taxicab which was involved in the collision. She was being taken to a nearby hospital and was the only eyewitness to the events which immediately preceded the impact. She never appeared at trial. Her testimony was read into the record from an evidence deposition which had been taken in New York on August 6, 1965.

Mrs. Swett fixed the vehicle's speed at about 15 miles per hour, stating that the speed was then reduced to approximately 10 miles per hour as it entered the intersection of Erie Street. She testified that she saw the decedent ahead standing on the northeast corner of the intersection. She explained that suddenly decedent walked forward, into the right-hand side of the taxi, his head striking the extreme right corner of the windshield. The witness stated that she thought the man's head was bowed down, apparently preoccupied. Mrs. Swett, at this juncture, was shown Plaintiff's Exhibits 2 and 3 which were two photographs of the vehicle in question. The photographs showed a shattered right portion of the windshield as well as dents in the right front door and front bumper. She stated that the photographs accurately portrayed the vehicle as it existed immediately after the impact. She thereafter attributed the shattered windshield to the contact it made with decedent's head. On impact, the witness stated, the decedent fell right over backwards and hit his head on the curb. She claimed that there was no movement of the body through the air. On cross-examination, Mrs. Swett said she did not recall seeing or passing a CTA bus stopped at the southeast corner of the intersection. She stated that she did not recall hearing the brakes of the taxi screech after the impact, but that she did remember the vehicle stopping suddenly in a span of 10 to 15 feet after such collision.

Although no other persons were called relative to the events which immediately preceded the occurrence, plaintiff called three witnesses (Carol Spancher, Jane Haw, and Gale Noonan) who testified as to events they witnessed immediately after hearing "the noise" or "thud." All were in close proximity to the collision. Spancher was approximately 50 to 75 feet behind decedent walking in the same direction. Haw and Noonan were each waiting for buses on the southeast and northwest corners

of the intersection respectively. Their testimony, as to several material factors, was in contradiction with that of Mrs. Swett.

Each said the traffic was light and that they could not recall hearing the screeching of brakes or ᴜne sound of a horn. Mrs. Haw testified that as she boarded a stopped bus on the southeast corner, she saw defendants' taxi coming fast and pass the bus. She said the bus was positioned about three feet away from the east curb at the time, and that the taxicab passed the bus while close to the center of Fairbanks Court. Mrs. Noonan recalled seeing a bus stopped at this corner just before the collision. Both Spancher and Noonan stated that the taxi was going about 20 to 30 miles per hour when they saw it. Mrs. Haw categorized it as traveling "fast." Both Spancher and Noonan stated they saw decedent's body fly in the air upon impact. Mrs. Spancher placed the body six to eight feet in the air above the crosswalk. Mrs. Noonan placed the body in the air above the car's hood and close to its windshield. All three witnesses agreed that the taxi did not come to a stop until approximately a half of a block past the point of impact. Likewise, all three placed the body in the street after impact. Mrs. Noonan stated the body landed north of the crosswalk. Mrs. Spancher stated that the body lay with its head three feet west of the east curb, the balance of the torso extending to the west. Mrs. Noonan remarked that when she first heard the noise and looked up, the taxi was entirely north of the crosswalk in which decedent had been walking.

■ From the conflicting testimony adduced, we feel the court was not in error in discrediting the testimony of defendants' only witness, even though her eyewitness account was the only one bearing directly on the events immediately preceding the impact. Mrs. Swett's testimony was directly contradicted in five material respects by the corroborated testimony of three of plaintiff's wit-

nesses; to wit, (1) that the body did not fly up into the air on impact, (2) the position of the body after impact, (3) the speed of the vehicle as it traversed the intersection, (4) the distance the vehicle travelled before allegedly coming to a "sudden stop" after the impact, and (5) her failure to recall seeing or passing a stopped CTA bus at the southeast corner, because, by her own admission, she had been thinking about going to the hospital.

Her evidence deposition, though entitled to equal weight had she testified in person, was taken more than four years after the date of the collision thereby compounding the questionable reliability of her narration. Mrs. Swett's claim that decedent walked into the taxi's windshield further strains the believability of her testimony. Physical limits dictate that a man five feet, seven inches tall could not plunge his head into an automobile windshield unless the upper half of his body were slumped forward considerably as he walked. Decedent had no malady which would suggest he walked in this manner. Her testimony, though direct, was irreconcilable with the accounts of three other witnesses as well as the physical circumstances, and hence could properly be discredited. The rule is that positive direct testimony may be contradicted and discredited by circumstantial evidence, discrepancies, omissions, or the inherent improbability of the testimony itself. Stephens v. Hoffman, 275 Ill 497, 114 NE 142 (1916); Sutherland v. Guccione, 8 Ill App2d 201, 131 NE2d 130 (1955).

Defendants argue that, assuming Mrs. Swett's testimony was properly discredited, there still exists no independent proof that decedent was in the exercise of due care at and immediately prior to the impact. Defendants point out that plaintiff's entire case relates to events subsequent to the collision. In addition, they contend that plaintiff seeks to establish due care by reference to defendant-Berrios' conduct prior to the impact and

not that of decedent. Defendants maintain that in such a situation decedent is guilty of contributory negligence as a matter of law, relying upon the cases of Russell v. Richardson, 308 Ill App 11, 31 NE2d 427 (1940), Rajek v. Cummings, 314 Ill App 465, 41 NE2d 969 (1942) and Soic v. Richardson, 315 Ill App 213, 42 NE2d 884 (1942).

The Russell case held that contributory negligence is a separate and distinct question from a claim of negligence on the part of the defendant. Each of these three cases ruled that, absent evidence of due care, the question of due care is one of law and not of fact. We do not take exception to the conclusions reached under the facts of these cases. Noteworthy however, and unlike the case at bar, in both the Russell and Rajek cases eyewitness testimony placed the oncoming vehicle within the deceased's plain and unobstructed view. Furthermore, both cases dealt with track riding vehicles which the deceased could not have expected to be capable of avoiding the collision by a swerving maneuver. See Carrell v. New York Cent. R. Co., 384 Ill 599, 52 NE2d 201 (1943). Similarly, the Soic case is not in point. There the approaching vehicle was in "clear view," and the deceased had not traversed the highway in the provided crosswalk.

In the instant case, a track riding vehicle is not involved. Moreover, the evidence presented reasonably indicates that the stopped CTA bus obstructed decedent's view of the oncoming taxi as he stood in a lawful crosswalk. In the case of Karlock v. New York Cent. R. Co., 333 Ill App 655, 78 NE2d 122 (1948), a similar obstruction was deemed sufficient in and of itself to submit the question of due care to the jury. The issue of contributory negligence can only become a question of law when the evidence offered is so insufficient to establish due care that all reasonable minds must neces-

28

sarily reach the same conclusion. Lauer v. Elgin, J. & E. Ry. Co., 305 Ill App 200, 27 NE2d 315 (1940); King v. Ryman, 5 Ill App2d 484, 125 NE2d 840 (1955); Campbell v. Ragel, 7 Ill App2d 301, 129 NE2d 451 (1955). Here there was room for a difference of opinion as to the inferences which may be legitimately drawn from the facts. As such, the question of due care was one of fact, not of law. Johnson v. Livesay, 29 Ill App2d 428, 173 NE2d 838 (1961); Schneider v. Russell, 32 Ill App 2d 112, 177 NE2d 5 (1961).

▮▮ Defendants next contend that if the issue of due care was properly submitted as a question of fact, then, in the alternative, the judgments were contrary to the manifest weight of the evidence. It is settled law that a court of review will not upset a judgment as contrary to the manifest weight of the evidence unless a contrary conclusion is clearly evident. As the court stated in Blumb v. Getz, 366 Ill 273, 8 NE2d 620 (1937):

> . . . unless it can be said that the action of a person is clearly and palpably (contributorily) negligent, it is not within the province of the court to substitute its judgment for that of a jury . . . (Insert supplied.)

Nor are we empowered to reweigh the evidence or test the credibility of witnesses. Mokrzycki v. Olson Rug Co., 28 Ill App2d 117, 170 NE2d 635 (1960).

▮ We do not think it can be said that the evidence, when taken as a whole, together with all its reasonable intendments and inferences most favorable to plaintiff, was manifestly inadequate to support the judgments entered. We are not, in so ruling, ignoring the language of Russell v. Richardson, 308 Ill App 11, 31 NE2d 427 (1940) and Rajek v. Cummings, 314 Ill App 465, 41 NE 2d 969 (1942), which treated due care as a separate and distinct question from that of the defendant's neg-

ligence. In wrongful death actions the availability of evidence as to both negligence and due care are often at a premium because of the death of the parties involved, the absence of competent witnesses under the Dead Man's Statute, and the reliability of the testimony of an eyewitness due to the exigencies of the situation. It is because of this we feel the better view is expressed in Cahill v. Cummings, 322 Ill App 662, 54 NE2d 634 (1944). There the court, in rejecting the position taken in Russell and Rajek, stated that while negligence of a defendant and due care of a decedent are distinct questions, due care may be determined, not independently, but rather as it relates to defendant's negligence.

■ ■ Here plaintiff did not offer any proof relative to whether decedent looked for approaching traffic before entering the intersection. Defendants' witness, Mrs. Swett, however, testified that decedent was "standing" on the northeast corner of such intersection which would indicate that he had stopped before entering the crosswalk. While he is not thereby relieved from his duty to exercise due care, a pedestrian has a lawful right to assume that motor vehicles using the streets will abide by the laws regulating vehicular speed, right-of-way, and the like. Ziraldo v. Lynch Co., 365 Ill 197, 6 NE2d 125 (1936); Warner v. Burke, 302 Ill App 85, 23 NE2d 393 (1939). Accordingly, even a failure to look for approaching traffic by a decedent when crossing a street has been held not to constitute a lack of due care as a matter of law, but is rather another question of fact for the jury to weigh. Morrison v. Flowers, 308 Ill 189, 139 NE 10 (1923); Moran v. Gatz, 390 Ill 478, 62 NE2d 443 (1945); Arbogast v. Fedorchak, 44 Ill App2d 160, 194 NE2d 382 (1963). In the instant case, the evidence offered by plaintiff reasonably indicated that defendants violated numerous vehicular statutes which decedent had a right to presume would not be violated. See Ill Rev Stats 1961, c 95½, §§ 146, 171, and 212.

30

 In wrongful death actions, when direct and positive testimony on the subject is unobtainable, decedent's due care may be inferred from proof of his careful habits and circumstantial evidence surrounding the event. This is because only the highest degree of proof of which the case is susceptible is required. Randolph v. New York Cent. R. Co., 334 Ill App 268, 79 NE2d 301 (1948); Campbell v. Ragel, 7 Ill App2d 301, 129 NE2d 451 (1955); Robinson, Admx. v. Workman, 9 Ill2d 420, 137 NE2d 804 (1956); Schneider v. Russell, 32 Ill App2d 112, 177 NE2d 5 (1961); Bennis v. Chicago Transit Authority, 33 Ill App2d 334, 179 NE2d 421 (1961); Turnbull v. Porter, 55 Ill App2d 374, 206 NE2d 97 (1965).

Relative to the events during and immediately prior to the impact, this court is of the opinion that there existed no direct and positive testimony bearing on the issue of due care. The lone eyewitness' account was contradicted by and so inconsistent with other testimony that it was not believed by the trier of the facts. She stated that decedent walked directly into the side of the taxi. However, the witness, at no time, testified as to whether decedent looked down Fairbanks Court for oncoming traffic. In Davenport, R. I. & N. W. Ry. Co. v. DeYaeger, 112 Ill App 537 (1903), the court refused to categorize a witness as an eyewitness even though he purported to have seen the occurrence because:

> While . . . he saw deceased, he did not look at him all the time, and he did not observe whether deceased took any precautions to ascertain the approach of the train.

Cf. Lauer v. Elgin, J. & E. Ry. Co., 305 Ill App 200, 27 NE2d 315 (1940); Bennis v. Chicago Transit Authority, 33 Ill App2d 334, 179 NE2d 421 (1961).

Here, plaintiff offered the highest degree of proof of which her case was susceptible. Decedent was shown to be a healthy, alert, and intelligent person who had

enjoyed stability of employment. Decedent, during the course of his employment on the day in question, had performed his duties in the customary fashion. It is uncontested that decedent crossed the street in the provided crosswalk. Moreover, notwithstanding the absence of testimony from either side as to whether decedent looked before crossing, it may be reasonably inferred from the physical facts as they existed that decedent never saw the approach of the vehicle because of the stopped CTA bus which might have obstructed his view. Bennis v. Chicago Transit Authority, 33 Ill App2d 334, 179 NE2d 421 (1961).

As plaintiff offered in her closing argument and also in her brief and argument, a vehicle traveling at the speed of 20 to 30 miles per hour travels at 29.2 to 43.8 feet per second, and thus would traverse the 76 feet between the point where the bus was stopped and the north crosswalk, where decedent entered the intersection, in 1.8 to 2.5 seconds. The vehicle never sounded its horn. Absent some warning, we do not think we can charge decedent with the duty to have extricated himself from such a situation in time. Furthermore, the testimony of plaintiff's witnesses relative to flight of the body through the air and its position on the street, is consistent with and support plaintiff's theory; to wit, that the taxi struck decedent with its front, the shattered windshield being attributed to its contact with the body as it flew through the air. We, therefore, cannot say the judgments were contrary to the manifest weight of the evidence.

For the above reasons, the judgments are affirmed.

Affirmed.

BURKE and BRYANT, JJ., concur.