John Allen Bennis, Administrator With the Will Annexed of the Estate of William J. Bennis, Deceased, Plaintiff-Appellee, v. Chicago Transit Authority, a Municipal Corporation, Defendant-Appellant.

Gen. No. 48,229.

First District, Second Division.

December 5, 1961.

William J. Lynch and William S. Allen, and Michael A. Gerrard and James E. Hastings, all of Chicago (James E. Hastings, of counsel), for appellant.

Joseph Barbera, of Chicago (Charles D. Snewind, of counsel), for appellee.

MR. JUSTICE BRYANT delivered the opinion of the court:

This is an appeal from a judgment on the verdict awarding plaintiff the maximum of $20,000 in an action for wrongful death. Defendant's post-trial motions for a judgment notwithstanding the verdict or in the alternative for a new trial were denied. The principal grounds relied on by defendant in this appeal are: (1) There is no evidence, direct or circumstantial, that the decedent was exercising due care for his own safety at or before the time of the accident; (2) The verdict and judgment were against the manifest weight of the evidence; (3) The admission into evidence of a City of Chicago Ordinance requiring the stopping of trains at ground level stations and the embodying of that ordinance into an instruction to the jury was prejudicial error since the ordinance did not apply to the Chicago Transit Authority.

No issue is raised on the pleadings.

Plaintiff's decedent, an off-duty Chicago policeman, was struck by defendant's two-car rapid transit train on May 13, 1952, shortly before midnight. He died two hours later after an operation for amputation of his legs. The accident occurred at the intersection of Lake Street and Central Avenue in Chicago, Illinois, where Chicago Transit Authority (hereafter referred to as CTA) maintains double lines of railroad tracks at ground level on Lake Street in an east-west direction. Defendant maintains its Central Avenue passenger station on the west side of Central Avenue;

336

on the east side of the avenue there is a crosswalk across the street and railroad tracks. This is an extension of the east sidewalk of Central Avenue. Immediately to the north of the tracks there is a high abutment over which the Chicago and Northwestern Railroad operates its trains, and Central Avenue passes under this abutment by means of a viaduct.

CTA maintains crossing gates which may be lowered to barricade both the street and the sidewalk on both sides of the tracks. Lattice guards are suspended from the gates to prevent persons from crossing under them when the gates are down. A watchman's shanty is located between the tracks at the east edge of the east crosswalk. Immediately on the western side of the crosswalk, but on the same side of the street, there is a second shanty where the manual levers which operate the crossing gates are located. These shanties are connected by a rooflet and the east crosswalk passes between the two shanties. In the record there is some doubt as to whether and when a pedestrian crossing the tracks would have a view of eastbound trains obstructed by the second shanty and by the station on the west side.

The records shows that immediately prior to the accident the gates were up to let a car cross the tracks when the train involved in the accident was about 200 feet west of Central Avenue. There was conflicting testimony as to whether the crossing gates were down or three-fourths of the way up when the train crossed the intersection. The speed of the train when crossing the intersection was between 10 and 20 miles per hour, according to various witnesses.

There is no direct evidence as to which way decedent was crossing the tracks, nor in what regard to his own safety. Robert Plimmer, who operated a newsstand at the corner of Central Avenue and Lake Street, testified as a disinterested witness that imme-

diately prior to the accident he noticed a man by the shanty and behind the watchman. The man was between the two tracks and facing south, apparently going south. The decedent was not identified or seen immediately prior to the accident, except by possible inference from the testimony of Plimmer. Nothing is shown as to the movements of the deceased immediately prior to the accident.

The motorman and the conductor of the train, as well as the crossing gateman, first became aware that an accident might have happened when they heard a noise or bump just east of the Central Avenue crossing. Plimmer first became aware that something might have happened when he saw the train make an unscheduled stop at Pine Avenue, a block farther east. None of the witnesses saw the accident. According to the testimony of the conductor the decedent was lying to the rear of the train between some cinders, which were located approximately 20 to 25 feet from the east crosswalk of Central Avenue. According to the motorman, the body was a car length east of the crosswalk, which would be fifty feet, and about a foot from the north rail of the eastbound tracks.

It is without doubt that the decedent was a pedestrian and that he was struck by defendant's eastbound lay-up train. Nor is it disputed that the train did not stop at the Central Avenue station. However, on this point the trial court admitted into evidence the following ordinance of the City of Chicago:

> "188–36. No person owning or operating any elevated railroad shall suffer or permit any car operated by it, when in transit over the surface of the ground upon rails laid thereon, to be run by any street intersection at which a station has been provided, without stopping. All such cars while so in transit shall be stopped at each station."

338

Defendant objected to the admission of the ordinance on the ground that it did not apply to CTA because of the subsequent passage of the Metropolitan Transit Authority Act and the ordinance would be ineffectual as to CTA. Defendant also objected on the ground that the ordinance in itself is not applicable to the issue of proximate cause. He further objected to an instruction based on the ordinance to the effect that it was the duty of the defendant to bring the train in question to a stop before crossing Central Avenue. Defendant's post trial motion made both the introduction of the ordinance in evidence and the instruction based upon it grounds for a new trial.

Plaintiff-appellee argues that the circumstances and inferences raised by the evidence are sufficient under the law to present a jury question as to the decedent's freedom from contributory negligence and that due care is always a question of fact where there is any evidence in the record which may support such an inference.

 The law requires the plaintiff to allege and prove due care as a necessary and material part of the case in an action for wrongful death, Newell v. C., C., C. & St. L. R. Co., 261 Ill 505, 104 NE 223, and the burden is upon the plaintiff to establish due care, not upon the defendant to prove contributory negligence. It is equally well known that the exercise of due care may be inferred from all the facts and circumstances shown to exist prior to and at the time of the accident, Ruspantini v. Steffek, 414 Ill 70, 110 NE2d 198, and that the question of due care on the part of plaintiff's intestate is always a question of fact to be submitted to a jury when there is any evidence in the record which, with any legitimate inference that may reasonably and legally be drawn therefrom, tends to show the exercise of due care on the part of deceased. Thomas v. Buchanan, 357 Ill

270, 192 NE 215. Due care becomes a question of law only when the evidence is so clearly insufficient to establish due care that all reasonable minds would reach the conclusion that there was contributory negligence. Ziraldo v. Lynch Co., 365 Ill 197, 6 NE2d 125; McManaman v. Johns-Manville Products Corp., 400 Ill 423, 81 NE2d 137.

■ After reviewing all the facts in evidence in the instant case, this court cannot say that, as a matter of law, there was no basis from which due care could be inferred. The question was one of fact and was properly submitted to the jury under instructions requested by both plaintiff and defendant. No question is raised in this appeal as to the correctness of the relevant instructions on due care. The highest proof of which this particular case was susceptible was presented to the jury. This proof included: the uncontradicted testimony of the disinterested witness Plimmer, the elevation of the crossing gate, the proximity of decedent's body to the crosswalk after the accident, the possibility of an obstructed view, and the uncontroverted fact that an automobile had been permitted to cross the tracks shortly before the lay-up train crossed over Central Avenue. Such circumstantial evidence was sufficient to justify the inference that decedent was in the exercise of due care.

■■ In asserting that the verdict and judgment were against the manifest weight of the evidence, appellant principally reargues the issue of due care in another guise. The weakness of appellant's position is indicated where he assumes arguendo that if the gates were three-quarters of the way up, and this is held to be evidence of negligence, there still was no evidence that decedent relied upon or was misled by that fact. He argues further: "It seems clear that if decedent was able to observe the position of the gates, he would also have been able to observe the approach

340

of the train and easily have avoided contact with it." This conclusion was not so compelling or clear to the jury and there is ample evidence in the record from which the jury may properly and legally have inferred that a pedestrian proceeding across the tracks from behind the shanty when the gates were up would be almost immediately upon the tracks and could not have avoided an oncoming train even if he had looked. Such conclusions are not, of course, compelled by the evidence; nor are they necessarily the ones that the jury made. But from the foregoing it is clear that the verdict and judgment are not against the manifest weight of the evidence. It is well established in Illinois that the reviewing court will not undertake to substitute its judgment for that of the trial court, unless the verdict is clearly and palpably against the weight of the evidence. Ward v. Illiopolis Food Lockers, Inc., 9 Ill App2d 129, 132 NE2d 591.

Appellant relies on Davis v. Chicago, Rock Island and P. R. Co., 172 F Supp 752, and Groesch v. Gulf, Mobile and Ohio Railroad Co., 241 F2d 698, to refute the inference decedent exercised due care. These cases are not persuasive when applied to the facts of the instant case because they rest, in part, on the finding that plaintiff or decedent could easily have observed the approach of the train before placing himself in a position of danger. Here the layout of the crossing and the testimony do not necessarily demonstrate, as appellant urges, that the decedent as a pedestrian had an ample view of the approach of the train.

■ Appellant also argues that there were no eye witnesses, only "ear witnesses," and that the proof, if any, of decedent's due care would have to come from the circumstances or from testimony as to habits of care. We have already indicated from our discussion that the circumstances may legally justify such an

341

inference, if the jury chose to make it. Such circumstances also obviate the necessity for testimony as to habits of care. "The test is not whether a witness saw an accident, but whether he observed circumstances from which a fact or facts in question necessary to a plaintiff's case may be inferred." Elliott v. Elgin, J. & E. Ry. Co., 325 Ill App 161, at 180, 59 NE 2d 486, Kiley, J., specially concurring.

The final point raised in this appeal presents a more troublesome issue. The trial court over objection of defendant admitted into evidence an ordinance of the City of Chicago, supra, and gave to the jury plaintiff's instruction 5 as follows:

> "The court instructs the jury that at the time and place of the happening of the occurrence in question, there was in full force and effect an ordinance of the City of Chicago which provided as follows:

> (Quoting the ordinance)

> "The jury is instructed that at the time and place in question it was the duty of the defendant, Chicago Transit Authority, to bring the train in question to a stop before crossing Central Avenue."

■ This ordinance does not apply to CTA since the Metropolitan Transit Authority Act granted full power to CTA to own, operate, regulate and control its transportation system. (Ill Rev Stats 1959, c 111⅔, §§ 303, 306, 330, 331.)

■ The Commerce Commission, which had regulatory powers over the predecessor private companies, lost its jurisdiction when CTA took over the ownership and operation of these properties. Fallon v. Illinois Commerce Commission, 402 Ill 516, 84 NE2d 641; Lustfield v. Chicago Transit Authority, 408 Ill 404, 97 NE2d 347.

The powers given under the Metropolitan Transit Authority Act are broad and complete. The Supreme Court said in the Lustfield case, supra, at 413:

"The language of the Transit Authority Act is very clear. Section 3, section 6 and section 30 of the act, discussed above, indicate the complete authority vested in the Chicago Transit Authority by the terms of the Transit Authority Act. Section 31 of the act provides that the board shall have power to pass all ordinances and make all rules and regulations proper or necessary to regulate the use, operation and maintenance of the property and facilities and to carry into effect the powers granted to the authority. We cannot imagine stronger language to convey to the Transit Authority full power to conduct the business of managing, regulating, and operating a transportation system in the municipal area of Chicago. Whether or not the legislature was wise in its decision to convey this authority to the Transit Authority is not for us to say. . . ."

In a case similar to the instant one, Northern Trust Company v. Chicago Rys. Co., 318 Ill 402, 149 NE 422, there was a city ordinance requiring a bright headlight on streetcars. Plaintiff's decedent was killed by a streetcar and it was undisputed that the headlight was not in operation at the time of the accident. It was held that the City of Chicago ordinance was void upon the passage of the Public Utilities Act and that the admission of the ordinance into evidence and the given instruction constituted reversible error.

Similarly, the ordinance and instruction here constitute prejudicial error and the judgment must be reversed and this cause remanded for a new trial.

FRIEND, P. J. and BURKE, J., concur.