**Rockford Memorial Hospital Association, a Corporation, Plaintiff-Appellant, v. Max Wells and Oregon Township, a Municipal Corporation, Defendant-Appellee.**

Gen. No. 67–81.

Second District.

November 29, 1967.

Pedderson, Menzimer, Conde and Stoner, and Harold Stern, of Rockford, for appellant.

John L. Moore, of Oregon, for appellee.

MR. JUSTICE ABRAHAMSON delivered the opinion of the court.

This action was originally filed by Rockford Memorial Hospital Association on November 22, 1965, against Max Wells and Oregon Township. Count I of the complaint was against Max Wells, who is now deceased, and does not concern us in this appeal. Count II was against Oregon Township to recover for hospital services allegedly rendered Wells from January 21, 1963, when he was admitted as a patient, to his discharge on February 26, 1963, less that portion of the total bill paid by private insurance. The cause was heard by the court without a jury on March 3, 1967, and was taken under advisement at the conclusion of the evidence.

On March 9, 1967, judgment was entered against the plaintiff and on April 4, 1967, the court denied a post-trial motion to vacate the prior judgment and this appeal followed.

The action was brought under section 4–14 of the Public Assistance Code of 1949, as amended (Ill Rev Stats, c 23, par 414, 1961) which provided, in part, as follows:

"414. #4–14. Assistance to the Medically Indigent.) When a person not otherwise eligible for or receiving general assistance under Article IV, or assistance under Articles V, V–B, VI, VII, or VIIA falls sick or dies, not having sufficient money, property or other resources, including income and earnings available to him over a 12 month period, to meet the cost of necessary medical, dental, hospital, boarding or nursing care, or burial, *the supervisor of general assistance in the governmental unit in which such person is at the time of his illness or death, shall give or cause to be given to him such care as may be necessary and proper, . . ."* (Emphasis ours.)

Paragraph 414 further provides that "Eligibility for care as a medical indigent shall be determined in accordance with the rules and regulations of the Commission."

It is agreed that Max Wells was a resident of Oregon Township at the time of his illness in January and February, 1963, and that if he were otherwise eligible for assistance under the Code, that it would be due from Oregon Township under the provisions quoted. The evidence disclosed that Wells was suffering from cancer at the time of his admission to the hospital and that he had a lung removed during this hospitalization. On February 20, 1963, a hospital administrator wrote to Mr. Clarence Anderson, the Oregon Township supervisor of public assistance, and informed him that Wells was "an emergency patient" at the hospital and that they "have only recently been able to determine that he may be medically indigent as that term is defined in the Illinois

State Statutes" and that reimbursement was accordingly expected from the township for services rendered. Anderson returned the letter with a cryptic note on the bottom that "Max Wells is not an indigent case by our standards. He has been working and has hospital insurance. Also, I was not notified until after he had left the hospital." On February 26, Wells was discharged from the hospital and returned home.

It was also disclosed that Wells had been adjudicated a bankrupt on the basis of his voluntary petition filed March 5, 1964. The bankruptcy schedules were admitted into evidence and revealed that he had liabilities of $5,522.97 and assets worth $1,100 on the date he filed the petition. Most of the liabilities were medical and hospital bills, but the schedules did not indicate when they were incurred. The bankruptcy petition also stated that Wells was employed as a laborer at the Conover-Kable Piano Company at that time; that he had been so employed for 5 years prior; and that he had earned approximately $4,800 during each of the two years immediately preceding the filing of the petition.

Rule 38.02 of the Illinois Public Aid Commission was in effect at the time in question. That rule provided:

> "When it is determined by a source of medical care or funeral director that a sick or deceased person is without sufficient income and resources to meet the cost of necessary medical care or funeral and burial, and a request is being made for Assistance to the Medically Indigent, the source of medical care or funeral director shall notify the supervisor with reasonable promptness of such request and furnish information that the person does not have sufficient resources to pay the medical and/or funeral and burial expense.
>
> "For purpose of this rule, 'reasonable promptness' is to be considered notification within five working

days. However, if there are extenuating circumstances in any case, the supervisor may extend the period of time for such notification . . ."

Rule 38.06 provides that the determination of medical indigency shall include a consideration of "all money, property, or other resources, including assistance from relatives, income and earnings available to the applicant over a 12 month period" beginning one month prior to the month of application.

Prior to the enactment of the Public Assistance Code, the cases held that one who furnished hospitalization or medical assistance to a needy person would be required to notify the appropriate overseer of the poor "within a reasonable time" to be entitled to reimbursement for the services thus rendered. St. Anthony's Hospital of Sisters of St. Francis, Inc. v. County of Fayette and Town of Avena, 313 Ill App 653, 40 NE2d 538 (Abst.). In the 1960 case of Rockford Memorial Hospital Ass'n v. Whaples, 25 Ill App2d 79, 165 NE2d 523, decided after the Code was in effect, notice furnished by the hospital to the McHenry Township supervisor 23 days after admission of Ruth Whaples as an emergency patient was sufficient notice on the basis of the earlier rule that notice must be furnished "within a reasonable time." Ruth Whaples, then 4 years of age, had been ill with what her mother diagnosed as "Asiatic flu." When her condition worsened, a doctor was consulted in the afternoon of November 11, 1957, who determined that the child had pneumonia and made arrangements to have her admitted to the hospital that evening as an emergency patient. On December 4, the associate director of the hospital advised the township supervisor, by letter, that Ruth was a patient and that the parents were medically indigent. The letter requested an investigation and reimbursement to the hospital for the expenses of the hospitalization. The court concluded that the notice was sufficient under the

circumstances, particularly since the supervisor did nothing to either investigate or object to the claim of medical indigency; and, that under the evidence found in the record, the parents of Ruth were medically indigent persons.

■ The five working-day rule was promulgated by the Commission after the Whaples decision. It is contended by the plaintiff, however, that this case should be determined by the earlier decisions and not the five-day rule since, by reason of the "extenuating circumstances," it is an exception to that rule. However, the record does not indicate any extenuating circumstances that would remove the case from the effect of the rule. Wells was admitted to the hospital on January 21, and signed an admission application. The operation was performed several days after the admission and he was discharged in due course. We do not consider the sole fact that Wells was not a resident of metropolitan Rockford as a sufficient extenuating circumstance as urged by the hospital nor does it appear that Wells was an emergency patient at the time of his admission.

■■ The plaintiff states that the delay in the notice could not possibly have harmed the interests of the township and that, therefore, it would be a mere legalism to deny their claim on that basis. An argument to that end seems to ignore a major reason for the rule. The purpose of the prompt notification is to afford a protection for both the township and the hospital or other source of assistance. An early determination of the question of medical indigency would permit the hospital to make a timely and realistic appraisal of its financial relationship to the patient and to act accordingly.

It also appears to us that the evidential facts in the record before us fail to establish that Wells was a "medical indigent" at the time of his hospitalization. The Whaples case is also the only reported case on that question since the enactment of the Code. In that case,

the parents of Ruth Whaples were both unemployed at the time of her hospitalization. Ruth was the oldest of four children and the combined gross income of the parents during the 12-month period was $3,051. The only assets owned by the family were a small equity in a house trailer, an inoperable automobile and a $20 television set. The court concluded that they were properly categorized as "medically indigent."

 The evidence in the case before us is that Max Wells was employed and earned $4,800 a year at the time he entered the hospital on January 21, 1963. Although he was married, he did not live with or support his wife and he had no dependent children. Wells had some hospitalization insurance, but apparently few other assets. Any right of the plaintiff to recover against Oregon Township was dependent upon Wells' indigency. The plaintiff had the burden of proof in this respect. We cannot but agree with the trial court that this evidence failed to show that Max Wells was a medical indigent as the term is contemplated by the Public Assistance Code when he entered the hospital. Wells' bankruptcy petition filed March 5, 1964, while relevant, offers very inadequate proof as to his financial condition on January 21, 1963.

In the light of our conclusion on the issues of notice and indigency, we need not consider plaintiff's contention that the trial court improperly excluded the testimony of the credit manager of the hospital to the effect that the charges for the services rendered Wells were "usual and customary."

 It was, of course, the function of the trial court, as trier of the facts, to weigh the evidence and formulate its decision. We will not substitute our judgment for that decision where, as here, it is well supported by the record for review. Bennis v. Chicago Transit Authority, 33 Ill App2d 334, 341, 179 NE2d 421; Petition of Breger v. Seymour, 74 Ill App2d 197, 202, 219 NE2d 265.

The decision of the Circuit Court of Ogle County will be affirmed for the reasons stated.

Judgment affirmed.

DAVIS, P. J. and MORAN, J., concur.