SISTERS OF THE THIRD ORDER OF ST. FRANCIS, d/b/a St. Francis Hospital, Plaintiff-Appellee, *v.* GROVELAND TOWNSHIP, Tazewell County *et al.*, Defendants-Appellants.

(No. 71-120;

Third District—August 28, 1972.

*Rehearing denied September 29, 1972.*

Fred V. Stiers, and Mathis, Sloan & Littler, both of Peoria, for appellants.

Benjamin B. Ward, of Peoria, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This case was heard by the circuit court of Tazewell County without a jury and upon a written stipulation as to facts and exhibits. No oral testimony was presented to the court. According to the stipulated facts

a Janice Pearson was admitted to St. Francis Hospital (hereinafter referred to as the plaintiff) in Peoria on January 6, 1970. At the time of her admission Janice Pearson was in the advanced stages of pregnancy and in fact gave birth to a child on the same date. At the time of her admission the patient listed her address as being in Creve Coeur, Groveland Township, Tazewell County, Illinois. On January 8, 1970, the defendant Edward Giebelhausen as Supervisor of Groveland Township was notified of Janice Pearson's admission to the hospital when he received at his office an Illinois Department of Public Aid form No. 450. On January 9, 1970, Janice Pearson was discharged from the hospital and also on this date her child was placed for adoption with the Child & Family Service in Peoria. On January 13, 1970, the defendant Giebelhausen rejected the case on the basis that the application for payment of services rendered to the patient was not on township forms and that the birth expense was the responsibility of the Illinois Department of Public Aid. Application was then made by Janice Pearson on township forms but a rejection was again made on the basis that the case was one for the Department of Public Aid. The amount claimed for services provided by the plaintiff is $343.55.

The stipulated facts as to a Wanda Ragsdale are similar. She was first admitted to the plaintiff hospital on June 17, 1969, after she had been released from Wood River Township Hospital where she had been placed by the sheriff of Madison County for emergency medical treatment. She had arrived in Groveland Township on June 16, 1969, and was staying with a friend in Creve Coeur. The defendant Giebelhausen was on June 19, 1969, notified of her admittance in the hospital by receiving a form 450 which had been mailed to his office. He was further notified on June 23, 1969, of Wanda Ragsdale's release from the hospital which had occurred on June 22, 1969. The defendant Giebelhausen rejected the claim of Wanda Ragsdale on the grounds of lack of residence and because of the use of form 450 instead of making a personal application at his office where township forms were available. At this time the plaintiff's bill for services was in the amount of $296.55. She was again in the hospital on October 18, 1969, and on November 19, 1969. Similar applications were made for services provided as the result of each of these two admissions and these claims in the amount of $100.45 and $258.00 were also denied.

Action was brought by the plaintiff hospital under Article VII, Local Aid to the Medically Indigent, Ch. 23, Sec. 7—1 to Sec. 7—6, for charges for services rendered to Janice Pearson and Wanda Ragsdale. Judgment was entered for the plaintiff in the amount of $998.55 against the defen-

dants Groveland Township and Edward C. Giebelhausen as its Supervisor. No judgment was entered against him individually. From the judgments entered the defendants prosecute this appeal.

The defendants raise a number of issues for review, the first of which is that the plaintiff hospital failed to prove that the patients Pearson and Ragsdale were medically indigent. This issue as presented to us presupposes that the plaintiff had a duty to make a determination as to whether or not the patients were medically indigent so as to be eligible for local aid as provided for in Ch. 23, Sec. 7—1 through Sec. 7—1.3, Ill. Rev. Stat. We do not believe that the plaintiff had the duty of making such a determination. In reaching this conclusion we were guided by the following statutory provisions:

"7—1.2 Need) The money, property, or other resources available to the person, including support available from legally responsible relatives, must be insufficient to meet the costs of necessary care, as defined by standards established in accordance with Section 7—2 of this Article. * * *." Ch. 23, Sec. 7—1.2, Ill. Rev. Stat.

"7—2. Amount of Aid—Standards) * * * The amount and nature of the care provided shall be determined in accordance with a uniform standard of eligibility established by the Illinois Department and its rules and regulations. The standard shall include provisions for determining what, if any portion of the income, property or other resources of an applicant or recipient is available to meet the cost of necessary care. However, a local governmental unit not receiving State funds for purposes of this Article may prescribe a uniform standard of eligibility according to local conditions. Such locally prescribed standards may be less, but not more, restrictive than the uniform standard of eligibility established by the Illinois Department. * * *." Ch. 23, Sec. 7—2, Ill. Rev. Stat.

■■ Reading these two provisions in conjunction with each other it is quite obvious that our legislature has placed the function of determining indigency or non-indigency upon the Department of Public Aid and certain township officials.

In order to assist the proper officials in making this determination the Department had prepared and transmitted to various hospitals certain forms referred to as D.P.A. forms 450 which in effect are applications for assistance. These forms are quite detailed and solicit personal information concerning the applicant's source of income, property, and ability to pay for hospital services. The form does require the hospital to certify that it has determined the applicant's ability to pay a portion of the hospital costs or that it has determined that the applicant is un-

able to pay any of the costs which will be incurred. However, this certification by the hospital of its determination as to the applicant's degree of indigency is not conclusive of the question since Department of Public Aid regulations issued in the form of official bulletins specifically provide that the completed application shall be sent to the supervisor of General Assistance of a township within five days after the patient's initial hospital admission or date of service for which the hospital desires payment. The hospital's certification as to the degree of indigency can only be interpreted as an expression of an opinion derived from an analysis of the applicant's answers to the questions appearing on form 450. A portion of the form is entitled "disposition" where are located appropriate blanks for the recipient's signature, *i.e.*, "the township supervisor", his determination of whether aid should be granted or denied and the reason for his action in the matter. This portion of form 450 is to be returned to its source, the hospital, within thirty days from its receipt by the township official.

We have set forth in detail the procedure to be followed when a determination is to be made as to the indigency or degree of indigency of an applicant for hospital and medical assistance since in doing so it becomes abundantly clear that the hospital performs the ministerial function of assisting the patient in completing the necessary forms provided by the Department of Public Aid. After this ministerial function is completed it becomes the duty of the township supervisor to take appropriate action. In the case now before us it was incumbent upon the defendant supervisor to reply to the request for aid contained in form 450 by making a determination as provided for in the rules and regulations of the Illinois Department of Public Aid. The record discloses that the township supervisor performed neither of the functions. He did not accept the forms nor did he accept or reject the case as being one of indigency, partial indigency or non-indigency. The defendant supervisor was not fulfilling his duty when he took the position that applicants for assistance must personally appear at his office in Creve Coeur, Tazewell County, for the purpose of making an application on forms which were specifically prepared and adopted by his township.

■■ A question strikingly similar to the one we have been considering was presented to this court in *Pekin Memorial Hospital v. Schilling*, 121 Ill.App.2d 473, 257 N.E.2d 124, where the supervisor of Pekin Township raised the issue concerning the acceptance of form 450 of the Department of Public Aid as being the basis for an investigation by his office. This court after reviewing the applicable statutes stated:

"The claims of plaintiff were in proper form and should have been honored by defendant. It is therefore apparent that the court properly

rejected the contention of the defendant that he is not subject to the regulations of the Illinois Public Aid Department."

In reaching the conclusion that the right of the plaintiff hospital to recover for the cost of services rendered is not dependent upon the hospital proving the indigency of the patient, we are fully aware of the case cited by the defendants, to-wit, *Rockford Memorial Hospital Assn. v. Wells and Oregon Township*, 89 Ill.App.2d 277, 231 N.E.2d 459. The holdings in the *Rockford Memorial Hospital* case are inapplicable since the question we have considered was never presented to the court but on the contrary the township supervisor of Oregon Township made a determination that the applicant was not indigent and produced evidence to that effect.

■■■ The defendants also urge as reversible error that the plaintiff failed to prove that the hospital services provided were necessary and that the charges for them were reasonable. An examination of the record clearly discloses that these questions were never raised before the trial court and cannot now be raised on review; but even if defendant's contentions were not disposed of by failing to bring them to the attention of the trial court the record belies his argument that there was no proof that the services provided by the hospital were necessary. Patient Janice Pearson gave birth to a child on the very day of her admission to the hospital and patient Ragsdale after having difficulties arising from her condition of pregnancy gave birth to a stillborn child. On the basis of the record it is apparent that the defendants were sufficiently appraised as to the plaintiff's charges to enable them to object if they had any questions as to the reasonableness of such charges. See *Pekin Memorial Hospital v. Schilling, supra.*

The defendants next argue that the plaintiff failed to prove that Groveland Township was where the patients were at the time of their illness; that there was no showing that the persons receiving hospital care were eligible to receive it from Groveland Township and further that illness for which the claims were made occurred in Peoria Township and therefore should have been presented to that township for disposition.

The forms 450 entered into evidence as exhibits before the trial court show the patients' residence to be Groveland Township, Tazewell County. Each form was signed by the patient and preceding the signature was the following statement:

"I declare under the penalties of perjury that I have written or caused to be written on this form the information requested and that I have read and examined or had read to me the completed form and to the best of my knowledge and belief, the information is true, correct and complete  *   *   *."

■■■ We believe it suffice to say that the plaintiff had the right to rely upon a sworn application as to place of residence. Two elements are necessary to create a "residence", bodily presence in that place, and intention of remaining in that place, and neither alone *is sufficient to create a legal residence.* (*Hughes v. Illinois Public Aid Com.,* 2 Ill.2d 374, 118 N.E.2d 14.) Under oath the patients stated their residence to be in Groveland Township, they gave street and city addresses located in that township and there is ample evidence in the record that they in fact did reside in such township and the record is barren of any evidence that they did not intend to continue to reside there. Chapter 23, Section 7—1.1, Illinois Revised Statutes, states:

"* * * The local governmental unit in which the person is at the time of his illness or death shall give or cause to be given the necessary aid * * *."

The trier of facts found that the patients Pearson and Ragsdale were residents of Groveland Township and that was where they were found when they became ill and needed hospitalization. We find nothing in the record that would permit us to substitute our judgment for that of the trial court in regard to determination of these questions.

■■ Lastly the defendants argue that townships should not be liable for treatment except to hospitals that are located closest to it. We know of no law, statutory or otherwise, that supports this contention and in fact there is none. In the absence of any such law, rule or regulation this question must be determined upon the factual situation presented in each case. Common sense must be the guideline for the closest located hospital may not necessarily be the most accessible one in terms of time consumed in arriving at its location and gaining admission. In the instant case as the result of the location of highways, the areas through which they traverse, traffic conditions and other factors there is a strong reason to believe that patients residing in Groveland Township, Tazewell County, would consume less time in traveling to the plaintiff hospital than traveling to the Pekin Hospital located in Tazewell County. To adopt the argument of the defendants and to have it applicable in *every instance would result in the imposition of an unreasonable rule* fraught with possible dangerous consequences.

For the reasons set forth the judgment of the Circuit Court of Tazewell County is hereby affirmed.

Judgment affirmed.

STOUDER, P. J., and DIXON, J., concur.