LILO FRANKENTHAL, Adm'x of the Estate of Harry J. Frankenthal, Deceased, Plaintiff-Appellant and Cross-Appellee, *v.* GRAND TRUNK WESTERN RAILROAD COMPANY *et al.*, Defendants-Appellees—(Grand Trunk Western Railroad Company, Defendant and Cross-Appellant).

First District (3rd Division)   No. 82—2139

Opinion filed December 14, 1983.

Leonard Ring and Associates, of Chicago (Leonard M. Ring and Judith E. Fors, of counsel), for appellant.

James R. Gannon and Paul V. Esposito, both of Chicago (Lewis, Overbeck & Furman, of counsel), for appellees.

PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff brought this action against defendants Grand Trunk Western Railroad Company and Bruce McTague, its engineer, seeking to recover for the death of her husband following a train collision with decedent's automobile. A jury returned a verdict in favor of defendant McTague. It also returned a verdict in favor of plaintiff against Grand Trunk in the amount of $100,000 but reduced that amount to $5,000 on its finding that the decedent was 95% at fault and Grand Trunk was 5% at fault. The trial court denied post-trial motions and entered judgments on the verdicts. On appeal plaintiff contends that the trial court committed reversible error in excluding testimony of decedent's careful habits and in instructing the jury. She also contends that the judgments in favor of McTague and finding decedent 95% at fault are against the manifest weight of the evidence. Grand Trunk has filed a cross-appeal contending that the trial court erred in not directing a verdict in its favor or in not granting its motion for judgment notwithstanding the verdict, in denying its motion to strike the testimony of plaintiff's medical expert, and in instructing the jury. Grand Trunk also contends that plaintiff's action under the survival act is barred by the statute of limitations.

The accident occurred at South Park Avenue in South Holland, Illinois. South Park is a four-lane road which runs north and south and is intersected by two Grand Trunk railroad tracks. The tracks are at a slight angle from southeast to northwest. The northern set of tracks handles westbound train traffic and the southern set of tracks handles eastbound train traffic. As a train approaches proceeding westbound,

it rounds a curve. The track is then straight for approximately a mile and a quarter before the South Park intersection and straight for approximately one-third to one-half mile after the intersection. About one-quarter mile east of South Park is a railroad crossing at 167th Street. To the west of South Park is the Thornton Junction where the Grand Trunk tracks are intersected by tracks of another railroad.

The South Park crossing is surrounded by both commercial and residential property. As a vehicle approaches heading north, the visibility to the right is reduced by trees and homes along the track. The crossing is protected by gates with flashing lights and cantilevered lights. Also posted are signs indicating a railroad crossing and that there are two sets of tracks. The gates and lights are activated as the trains move over an electrical circuit some distance before the crossing. There is no dispute that on the day of the accident the gates had lowered and the lights were flashing at the South Park crossing.

Grand Trunk's passenger train 155, involved in the occurrence, originated in Port Huron, Michigan. With McTague as engineer, the train proceeded to Chicago. It approached South Park at about 8 a.m. on January 26, 1971. The train was traveling at 79 miles per hour but McTague started service reduction of the automatic brakes before reaching South Park in order to slow the train to 60 miles per hour when it reached the Thornton Junction. Just prior to the collision the train was traveling approximately 73 miles per hour.

Decedent left his home shortly before 8 a.m. and drove north on South Park Avenue. According to Bob Worthington, the train fireman, decedent's automobile approached the crossing at about 30 to 40 miles per hour without stopping. Worthington also noticed a freight train coming east on the other set of tracks. As decedent drove around the lowered warning gates and across the tracks, Worthington yelled at McTague to apply the emergency brakes.

Nancy Hendrickson, the driver of a southbound automobile on South Park, saw the decedent's vehicle on the tracks only an instant before it was struck by the train. She testified that the gates at South Park were frequently lowered for long periods of time without a train crossing. On the morning of the accident, before decedent went around the gates, she saw three or four other vehicles go around the gates during approximately a 10-minute wait. As decedent drove across, his automobile was struck in the right rear and thrown into the southbound lane of traffic, breaking the gate and striking Hendrickson's automobile.

Decedent suffered serious injuries requiring 50 days of hospitalization. He died 20 days after his release from the hospital.

■ On appeal plaintiff initially contends that the trial court erred in refusing to admit testimony regarding the careful habits of the decedent. We do not agree.

In excluding such testimony, the trial court properly relied on the long-accepted principle that careful habits testimony is allowed to establish decedent's due care prior to the accident only when there are no eyewitnesses to the occurrence. (*Newell v. Cleveland, Cincinnati, Chicago & St. Louis Ry. Co.* (1914), 261 Ill. 505, 104 N.E. 223; *Lobravico v. Checker Taxi Co.* (1967), 84 Ill. App. 2d 20, 228 N.E.2d 196.) In the present case, two eyewitnesses, Hendrickson and Worthington, observed the occurrence. While Hendrickson's testimony related only to an instant before the collision and thereafter, Worthington's testimony described the events leading up to and following the collision. Plaintiff argues, however, that Worthington's testimony was impeached and was unworthy of belief. Our review of the record does not reveal that his testimony was impeached. Moreover, merely because Worthington's credibility was attacked does not in itself justify the use of careful habits testimony. (*Petro v. Hines* (1921), 299 Ill. 236, 132 N.E. 462.) A holding that careful habits testimony would be admissible any time the credibility of the eyewitness was challenged, as plaintiff argues, would obliterate the rule holding such testimony generally not admissible. The trial court correctly excluded the careful habits testimony.

Plaintiff next argues that the trial court erred in giving certain defendants' instructions to the jury and in refusing to give certain instructions tendered by her.

Defendants' instruction No. 4, Illinois Pattern Jury Instruction (IPI), Civil, No. 73.01 (2d ed. 1971), given to the jury over plaintiff's objection, is as follows:

"A railroad crossing is a place of danger. If you believe from the evidence that as the decedent was approaching the crossing he knew, or, in the exercise of ordinary care should have known, that a train approaching the crossing was so close to the crossing that it would be likely to arrive at the crossing at about the same time as the decedent's vehicle, then it was the duty of the decedent to yield the right of way to the train."

The committee notes on use advise that this instruction should not be given in cases where the automatic gates were up or the flashing lights were not operating at the time of the accident. Plaintiff contends that since the gates and signals at the South Park crossing were frequently lowered for long periods of time when no trains were approaching, the crossing was defective and that thus the instruction

was improperly given to the jury.

■ It is undisputed that at the time of this accident when the decedent approached the crossing, the gates were lowered and the lights were flashing. The safety devices operated exactly as they were intended and were not defective. The purpose of crossing gates is to warn of a train's approach. (*Langston v. Chicago & North Western Ry. Co.* (1947), 398 Ill. 248, 75 N.E.2d 363.) While evidence that the gates lower when trains were not crossing was admissible as bearing on decedent's state of mind and conduct, that evidence did not negate decedent's duty to exercise ordinary care and to yield the right of way to the train. Defendants' instruction No. 4 correctly stated the principles applicable to the present case and the trial court properly gave the instruction to the jury.

Plaintiff also contends that the trial court erred in giving defendants' instruction No. 10, IPI Civil No. 60.01. The instruction incorporated a section of the Illinois Rules of the Road (Ill. Rev. Stat. 1979, ch. 95½, par. 11—1201), and set forth a motorist's duty to stop at railroad crossings.

In the trial court, plaintiff objected to the instruction on the ground that the crossing was defective. On appeal, she contends that a judicial modification has been placed on the statute insofar as the failure to look and listen before proceeding may be excused by the surrounding circumstances; in this case, the fact that the gates sometimes lowered when no train was imminent. (See *Langston v. Chicago & Northwestern Ry. Co.* (1947), 330 Ill. App. 260, 70 N.E.2d 852.) Plaintiff further argues that the jury could have incorrectly believed that there were no circumstances under which a vehicle could proceed under a lowered crossing gate.

■ Objections to instructions must be specific. (87 Ill. 2d R. 239(b); *Bean v. Norfolk & Western Ry. Co.* (1980), 84 Ill. App. 3d 395, 405 N.E.2d 418.) In addition, where the party complains an instruction was not given which should have been, he must tender a proper instruction or the objection is waived. (87 Ill. 2d R. 366(b)(2)(i); *Saldana v. Wirtz Cartage Co.* (1978), 74 Ill. 2d 379, 385 N.E.2d 664.) Plaintiff did not tender an instruction incorporating what she believed was a judicial modification of the statute, and she has waived any objection.

Plaintiff next contends that the trial court erred in refusing to give the jury her instruction No. 8, based on IPI Civil No. 5.01, which concerns the inference which may be drawn from the failure to produce evidence. Plaintiff tendered this instruction because defendants did not produce a Grand Trunk timetable which specified speed limits

for its trains.

■ Worthington testified that the train speed of 79 miles per hour was permitted under the timetable. There was no evidence that the timetable would have contradicted the direct testimony, and the court properly refused to give the instruction. *Feigl v. Terminal R.R. Association* (1975), 30 Ill. App. 3d 55, 332 N.E.2d 416.

■ Plaintiff further contends that the court erred in refusing to give plaintiff's instruction No. 30. The instruction incorporated certain portions of section 14 of "An Act in relation to fencing and operating railroads" (Ill. Rev. Stat. 1969, ch. 114, par. 70). The statute dealt with obstruction of railroad crossings.

Section 14, at the time of the present accident, applied only to trains which were stopped at a crossing. (See *People v. Indiana Harbor Belt R.R. Co.* (1981), 102 Ill. App. 3d 811, 430 N.E.2d 104.) The trial court properly refused to extend the statute to the facts of this case, and there was no error in refusing to give plaintiff's instruction No. 30.

■ Plaintiff next contends that the jury verdict in favor of defendant Bruce McTague, the engineer, is against the manifest weight of the evidence. At trial, plaintiff maintained that McTague negligently operated the train at a dangerous rate of speed under the prevailing conditions. Those conditions included the facts that the crossing gates were defective, that the surrounding area was commercial and residential, and that the accident occurred during the morning rush hour when more traffic was present.

A verdict is not against the manifest weight of the evidence unless it is palpably erroneous and wholly unwarranted. (*Kern v. Uregas Service of West Frankfort, Inc.* (1980), 90 Ill. App. 3d 182, 412 N.E.2d 1037.) On appeal, the court will examine the record to determine a basis upon which the verdict can be supported. (*Slowik v. Schrack* (1979), 77 Ill. App. 3d 42, 395 N.E.2d 753.) The court will not substitute its judgment for that of the jury unless the evidence favoring the opposite conclusion is clearly evident. *DePaepe v. Walter* (1979), 68 Ill. App. 3d 757, 386 N.E.2d 875.

The law does not impose a specific speed limit for trains. In the interest of rapid, efficient train service, trains may be operated at speeds which are consistent with a due regard for the safety of passengers and the safety of persons passing over railroad tracks. (*Provenzano v. Illinois Central R.R. Co.* (1934), 357 Ill. 192, 191 N.E. 287.) McTague had the right to assume that motorists approaching the tracks would exercise due care for their own safety. *Provenzano v. Illinois Central R.R. Co.*

The record amply supports the jury's verdict in favor of McTague. Worthington testified that McTague was complying with the speed limits set by Grand Trunk and that he immediately applied the emergency brake when Worthington called out a warning. The jury heard testimony that the gates were lowered and the lights were flashing to warn of an approaching train. The verdict in favor of McTague is not against the manifest weight of the evidence.

Plaintiff finally contends that the verdict finding decedent 95% at fault and Grand Trunk 5% at fault is against the manifest weight of the evidence. Our review of the record and the courts' reluctance to disturb a jury verdict absent a finding that it is wholly unwarranted require us to uphold the verdict.

Plaintiff points out that since the jury found in favor of McTague its verdict against Grand Trunk had to be based on a finding that Grand Trunk negligently maintained the South Park crossing. Plaintiff presented evidence indicating that Grand Trunk had been notified its trains waiting to enter the train yards were causing the crossing gates to lower unnecessarily for long periods of time and causing motorists to go around the lowered gates. Plaintiff thus argues that Grand Trunk's conduct was as equally responsible, if not more, as that of decedent. This argument overlooks other evidence presented to the jury. The jury heard testimony that the gates were lowered and the lights were flashing at the time of the accident, that the train's bell, whistle and light were activated, that decedent passed several stopped vehicles, that he did not stop at the crossing, that the train tracks were straight for over a mile to the east of the crossing, that a driver's view was partially obstructed, that approximately 35 trains passed that crossing every day, and that the day in question was cool and clear. Based on these facts, the jury could reasonably find that decedent was almost entirely responsible for the accident.

We turn now to a consideration of Grand Trunk's cross-appeal. We consider first Grand Trunk's contention that plaintiff's survival action is barred by the statute of limitations.

We are asked to decide whether an amendment to the pleadings in a case refiled pursuant to section 24 of the Limitations Act (Ill. Rev. Stat. 1977, ch. 83, par. 24a), relates back to the date of the original filing or the date of refiling. Grand Trunk asserts that the amendment relates back to the refiling, and that the survival action, which is the subject of the amendment, is not timely. Plaintiff urges that the amendment relates back to the original filing in 1972.

Plaintiff's 1972 complaint alleged a cause of action for wrongful death. In 1974, our supreme court recognized that a cause of action

for injuries survives even though the decedent died as a result of those injuries. (*Murphy v. Martin Oil Co.* (1974), 56 Ill. 2d 423, 308 N.E.2d 583.) Plaintiff's suit was dismissed for want of prosecution in 1977 and was refiled within one year. The refiled complaint incorporated a new claim under the survival act (Ill. Rev. Stat. 1969, ch. 3, par. 339), as interpreted in *Murphy*, for damages suffered from January 26, 1971, the date of the accident, until April 4, 1971, the date of decedent's death. Defendant argues that the amendment relates back to the 1977 filing and that since it was not filed within two years of the *Murphy* decision, it is barred. For purposes of this appeal, the new count is taken as an amendment.

■ Initially, we reject plaintiff's argument that Grand Trunk has waived the issue. The record discloses that the trial court considered the statute of limitations defense at the close of plaintiff's case and at the hearing on the post-trial motion. The issue was preserved for appeal.

Section 24 of the Limitations Act provides:

"In the actions specified in this Act or any other act or contract where the time for commencing an action is limited, if *** the action is dismissed for want of prosecution then, whether or not the time limitation for bringing such action expires during the pendency of such suit, the plaintiff, his heirs, executors or administrators may commence a new action within one year or within the remaining period of limitation, whichever is greater, after *** the action is dismissed for want of prosecution." (Ill. Rev. Stat. 1977, ch. 83, par. 24a.)

Section 24 allows the plaintiff to refile the identical cause of action. (*Flores v. Dugan* (1982), 91 Ill. 2d 108, 435 N.E.2d 480.) Grand Trunk argues that the new action is separate and distinct from the first filing and plaintiff may not use section 2—616 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—616), to "jump lawsuits."

Section 2—616(b) allows a party to amend pleadings and include a cause of action which grew out of the same transaction or occurrence in the original pleadings. The cause of action to be added by amendment must have been timely when the original complaint was filed. (Ill. Rev. Stat. 1981, ch. 110, par. 2—616(b).) Both section 24 and section 2—616 are remedial in nature and should be construed liberally. (*Roth v. Northern Assurance Co.* (1964), 32 Ill. 2d 40, 203 N.E.2d 415; *Kristan v. Belmont Community Hospital* (1977), 51 Ill. App. 3d 523, 366 N.E.2d 1068.) The purpose of section 2—616 is to prevent a party from losing a cause of action due to technicalities. *Wilfong v. W.A. Schickedanz Agency, Inc.* (1980), 85 Ill. App. 3d 333, 406 N.E.2d

828.

Clearly, if the suit had not been dismissed and refiled, the trial court could have permitted plaintiff to amend her complaint to include the survival action. The amendment arises out of the same train accident and Grand Trunk was afforded a sufficient opportunity to investigate the circumstances upon which plaintiff was attempting to impose liability. (*Cain v. New York Central R.R. Co.* (1962), 35 Ill. App. 2d 333, 182 N.E.2d 910.) Plaintiff should not be penalized for availing herself of the provisions of section 24. Where Grand Trunk had knowledge of the transaction and the amendment arises out of that transaction, the purposes of section 2—616 are met. We hold that an amendment to the pleadings relates back to the original filing where the suit had been dismissed and refiled in accordance with section 24.

Grand Trunk also contends that the trial court erred in denying its motion to strike the plaintiff's allegations of negligence, denying its motion for a directed verdict, and denying its motion for judgment notwithstanding the verdict.

The standard for judgments *n.o.v.* and directed verdicts was set forth in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504. Judgments should be entered or verdicts directed only where "all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." 37 Ill. 2d 494, 510, 229 N.E.2d 504.

Defendant argues that the verdict in favor of McTague indicates that the finding against Grand Trunk must be based on the allegation that Grand Trunk negligently maintained the crossing. From this it follows, according to Grand Trunk, that the jury improperly considered evidence that the crossing gates lowered at some prior occasion when no trains were approaching and that Grand Trunk cannot be found negligent because the crossing gates properly operated on the day of the accident. We hold, however, that the verdict in favor of McTague does not preclude a finding of negligence against Grand Trunk in establishing a 79 mile-per-hour speed limit for its trains. When the evidence is viewed most favorable to plaintiff, the jury verdict against Grand Trunk is amply supported by the record.

Grand Trunk next contends that the trial court erred in refusing to strike the testimony of Dr. Miesz regarding the cause of decedent's death.

Decedent had suffered a heart attack in 1953, and he had a 12-year history of arteriosclerotic disease. He was hospitalized for 50

days after the accident and died suddenly 20 days later after complaining that he was not feeling well. The death certificate listed the immediate cause of death as a myocardial infarction caused by coronary arteriosclerotic heart disease.

The testimony of a medical expert need not be based on absolute certainty, but only a reasonable degree of medical and scientific certainty. (*Nowicki v. Union Starch & Refining Co.* (1971), 1 Ill. App. 3d 92, 272 N.E.2d 674; *Redmon v. Sooter* (1971), 1 Ill. App. 3d 406, 274 N.E.2d 200.) An expert is not permitted to guess or speculate. *Simon v. Lumbermens Mutual Casualty Co.* (1977), 53 Ill. App. 3d 380, 368 N.E.2d 344.

Dr. Miesz gave his opinion, based upon a reasonable degree of medical and surgical certainty, that the accident was causally related to decedent's death. He stated that because of a lack of an autopsy, he had to deduce or speculate as to the immediate cause of death, but that it was a medical probability that but for the accident, that which was the immediate cause of death would not have occurred. The doctor's testimony was sufficient to remove his opinion from the range of mere conjecture and speculation. The trial court properly denied Grand Trunk's motion to strike the doctor's testimony regarding the cause of decedent's death.

We conclude that plaintiff was entitled to recover from Grand Trunk on her negligence count and that plaintiff presented sufficient evidence as to the causal relationship between the accident and decedent's death. Thus, we reject Grand Trunk's contention that the trial court erred in instructing the jury according to plaintiff's instruction No. 21, IPI Civil No. 31.04, relating to the damages suffered by plaintiff.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

WHITE and O'CONNOR, JJ., concur.