**Lazlo ILL, Valerie Ill, and Miklas Ill, Plaintiffs,**

v.

**William ROLAND, Mark Ross–Corbett, E.M. Bridges, Ronald Green, David Parker, Dale Clark, in their individual capacities, The City of Zion, a municipal corporation, Defendants.**

No. 92 C 6734.

United States District Court, N.D. Illinois, E.D.

Feb. 10, 1993.

---

**8.** 12 U.S.C. § 1818(i)(1) (1988).

Joseph Reed Millsaps, Michael Lee Maduff, Law Offices of Michael L. Maduff, Chicago, IL, Mark B. Peavey, Markham H. Jeep, Markham H. Jeep, P.C., Waukegan, IL, for plaintiffs.

Gregory E. Rogus, Martin A. Dolan, Segal, McCambridge, Singer & Mahoney, Ltd., Chicago, IL, for defendants.

## ORDER

NORGLE, District Judge.

Before the court is defendants' motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For reasons that follow the court grants the motion but grants the plaintiffs leave to file an amended complaint in accordance with this opinion.

## FACTS

On March 27, 1988, at about 5:30 a.m., defendants William Roland and Mark Ross–Corbett, two officers of the City of Zion's police force, entered the home of plaintiffs Lazlo Ill and Valerie Ill and there arrested Lazlo, Valerie, and Miklas Ill (collectively referred to as "plaintiffs"). In this action under 42 U.S.C. § 1983 and pendent state tort claims, the complaint charges various counts of excessive force, assault and battery, and false arrest against these two defendants as well as against defendants E.M. Bridges, Ronald Green, David Parker, and Dale Clark, police officers who arrived shortly after the

first two officers to assist in the arrest. The defendants allegedly executed an arrest without a warrant or probable cause. Furthermore, the defendant officers allegedly physically beat the plaintiffs with their hands and with billy clubs. In addition to these allegations, the complaint alleges that the officers, "without cause or justification," administered shocks to the plaintiffs by the use of stun guns.

As a consequence of these alleged incidents, plaintiffs brought suit in state court against the police officers and the City of Zion on March 27, 1989, within the two-year statute of limitations. ILL.REV.STAT. ch. 110, ¶ 13–202; [1] see *Farrell v. McDonough*, 966 F.2d 279, 281 (7th Cir.1992) (Illinois statute of limitations for personal injury suits applied to all § 1983 claims arising in Illinois), *cert. denied*, — U.S. —, 113 S.Ct. 1059, 122 L.Ed.2d 364 (1992). The City of Zion was a named defendant in the state law claims only, not in the § 1983 claims. Plaintiffs subsequently voluntarily dismissed the suit under ILL.REV.STAT. ch. 110, ¶ 2–1009 on January 28, 1992, and filed a complaint in the federal court on October 6, 1992, adding the City of Zion as a defendant to the § 1983 claims. The limitations period expired in March 1990. Illinois law allows a plaintiff who voluntarily dismisses its case to refile the case within one year of the dismissal if the limitation period expires during the pendency of the original action. ILL.REV.STAT. ch. 110, ¶ 13–217. All parties agree this last filing was within one year of the voluntary dismissal.

Nonetheless, defendants filed the present motion to dismiss in December 1992 raising three arguments. First, defendants argue against application of ¶ 13–217 in this case, asserting that Illinois's savings statute does not apply to § 1983 actions refiled in federal court. Consequently, defendants maintain the entire complaint must be dismissed as untimely. Secondly, defendants argue that, if ¶ 13–217 does apply in this instance, it does not allow the plaintiffs to assert claims against the City of Zion that were not part of the original case in the state court. Last, defendants contend that the complaint does not sufficiently plead municipal liability. Therefore, defendants argue that the court should dismiss the City of Zion from the § 1983 claims. The court will address each issue in turn.

## DISCUSSION

The parties agree that the statute of limitations for the § 1983 claims is borrowed from Illinois's limitation provision for personal injury actions. *See Owens v. Okure*, 488 U.S. 235, 250, 109 S.Ct. 573, 582, 102 L.Ed.2d 594 (1989); *Wilson v. Garcia*, 471 U.S. 261, 276–79, 105 S.Ct. 1938, 1947–49, 85 L.Ed.2d 254 (1985). Therefore, the appropriate limitations period in the present case is two years. ILL.REV.STAT. ch. 110, ¶ 13–202; *Farrell*, 966 F.2d at 281. The parties, however, dispute the application of the savings statute, ILL.REV.STAT. ch. 110, ¶ 13–217, to the present case.

The Illinois savings provision provides that, in actions where the time for commencing a suit is limited,

> if ... the action is voluntarily dismissed by [the] plaintiff ... then, whether or not the time limitation for bringing such action expires during the pendency of such action, the plaintiff ... may commence a new action within one year or within the remaining period of limitation, whichever is greater ... after the action is voluntarily dismissed by the plaintiff....

ILL.REV.STAT. ch. 110, ¶ 13–217. This section thus provides for a one-year grace period within which a plaintiff can refile its case, without regard to the expiration of the limitations period. There is no federal counterpart to this provision.

Defendants recognize that the borrowing of the state statute of limitations for § 1983 actions also brings along the state's tolling provisions as well. *Wilson*, 471

**1.** Effective January 1, 1993, Illinois adopted a new statutory compilation which resulted in a renumbering of the provisions of the Illinois Revised Statutes. This court has not yet converted to the new numbering and will consequently continue to cite to the Illinois Revised Statutes.

U.S. at 269, 105 S.Ct. at 1943; *Board of Regents v. Tomanio,* 446 U.S. 478, 485–86, 100 S.Ct. 1790, 1795–96, 64 L.Ed.2d 440 (1980). Yet defendants argue that the manner in which plaintiffs are presently attempting to utilize ¶ 13–217 goes beyond the mere borrowing of a tolling provision. Illinois's statute, defendants assert, is not expressly characterized as a tolling provision. Defendants contend that, because the provision can be used in two ways— only one of which actually tolls the limitations period (the other merely creating an entirely new time period within which to file)—the court must analyze the context in which the statute is being used in order to adopt it for purposes of 42 U.S.C. § 1983. For instance, defendants argue, if a plaintiff voluntarily dismisses an action prior to the running of the limitations period but toward the end of the period, the savings provision allows for an extension of the limitations period beyond the original time limit for the commencement of the new action. This constitutes a "tolling." If, on the other hand, the voluntary dismissal is obtained after the original limitations period has run, as in the present case, there is nothing to toll because the original limitations date has "come and gone." Thus, the statute creates a new limitation period within which to bring suit. Although the plaintiff may commence a new action within one year, defendants insist that this is not the true equivalent of a "tolling" in the traditional sense and as such this application of the statute is not to be borrowed.

On the other side of the coin, plaintiffs argue that the entire scope and nature of limitations issues in § 1983 cases should be interpreted by state law. This would include Illinois's provision regardless of how it is characterized. Plaintiffs note that at least two cases have applied ¶ 13–217 to the refiling of a claim in federal court. *See Locke v. Bonello,* 965 F.2d 534, 538 (7th Cir.1992); *Abdallah v. Slagg,* 803 F.Supp. 220, 221–22 (N.D.Ill.1992).[2] Plaintiffs additionally note that the Fourth Circuit applied a similar savings provision of the Virginia Code to a refiling of a § 1983 claim.[3] *See Scoggins v. Douglas,* 760 F.2d 535, 538 (4th Cir.1985). But in *Locke* and *Abdallah,* jurisdiction was based on the diversity of citizenship of the parties. Furthermore, these decisions are grounded in the position that the savings provision is substantive in the nature under *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). *See Abdallah,* 803 F.Supp. at 222. Perhaps that is a good place to start, but the present controversy arrives in the federal forum by way of 28 U.S.C. § 1343 as an action to redress the deprivation of civil rights pursuant to 42 U.S.C. § 1983 and thus necessitates a separate examination. Furthermore, the plaintiff in *Scoggins* failed to refile his complaint within the time frame afforded by the tolling statute and thus the statute would not have saved

**2.** This court has applied ¶ 13–217 to toll the statute of limitations in a § 1983 case. *See Flores v. City of Chicago,* 682 F.Supp. 950 (N.D.Ill.1988). Neither party mentioned *Flores.* But in that case the voluntary dismissal was obtained prior to the running of the statute of limitations. *Id.* at 952. To the extent that posture distinguishes *Flores* from the defendants' present position on this matter, the court will address the issue anew.

**3.** Virginia's statutory provision for tolling as a result of a voluntary nonsuit is similar to Illinois's provision and reads in pertinent part as follows:

If a plaintiff suffers a voluntary nonsuit ... the statute of limitations with respect to such action shall be tolled by the commencement of the nonsuited action, and the plaintiff may recommence his action within six months from the date he suffers the nonsuit, or within

the original period of limitation, whichever period is longer.

Va.Code § 8.01–229(E)(3). Defendants claim this provision is distinguishable because it expressly tolls the statute of limitations based upon an event occurring prior to the running of the original limitations period, namely the commencement of the nonsuited action. This argument fails to recognize the fact that, under Illinois's provision, the original suit must have been filed within the applicable time frame as well (and thus would constitute the event occurring prior to the running of the original limitations period on which the "tolling" or grace period is based). As is apparent, there is no real distinction between Virginia's provision and Illinois's provision because, under both schemes, the respective six-month or one-year "tolling" occurs because of the original filing of the nonsuited action, and does not depend on the point at which the original claim was nonsuited.

him even if it were to apply. *Scoggins*, 760 F.2d at 537. The court therefore puts little weight on the Fourth Circuit's quiet application of Virginia's provision to the § 1983 claim.

■ Instead, a discussion of the interplay between statutes of limitations, tolling, and § 1983 will form the boundary for this court's inquiry. Congress failed to specify a federal statute of limitations for § 1983 actions; hence the federal courts apply the states' personal injury statutes of limitations to fill the gap. *See generally Gray v. Lacke*, 885 F.2d 399, 407 (7th Cir. 1989), *cert. denied*, 494 U.S. 1029, 110 S.Ct. 1476, 108 L.Ed.2d 613 (1990). Federal courts must also apply the states' applicable tolling rules as well. *Wilson*, 471 U.S. at 269, 105 S.Ct. at 1943. But because the federal courts resort to state tolling rules only to the extent necessary to fill gaps that Congress leaves, *West v. Conrail*, 481 U.S. 35, 39–40, n. 6, 107 S.Ct. 1538, 1541–42, n. 6, 95 L.Ed.2d 32 (1987), the district court will apply state law "only when federal law neglects the topic," *Lewellen v. Morley*, 875 F.2d 118, 121 (7th Cir.1989), and only so long as the state tolling rule is not inconsistent with federal law, *Tomanio*, 446 U.S. at 485, 100 S.Ct. at 1795.

■ Federal law does not provide a grace period for voluntarily dismissed claims as does Illinois through its savings provision. So the court must determine whether this provision is a component of Illinois's limitations scheme such that it is to be adopted as a "tolling" mechanism, and whether the provision is consistent with federal policy.

The court determines that this provision is part of the limitation and tolling scheme of Illinois law such that it should be adopted for purposes of § 1983. "[S]tate law will often provide the content of the federal remedial rule" for cases filed pursuant to 42 U.S.C. § 1983. *Robertson v. Wegmann*, 436 U.S. 584, 594, n. 11, 98 S.Ct. 1991, 1997, n. 11, 56 L.Ed.2d 554 (1978). "In virtually all statutes of limitations the chronological length of the limitation period is interrelated with provisions regarding tolling, revival, and questions of

application." *Tomanio*, 446 U.S. at 485–86, 100 S.Ct. at 1796 (quoting *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 463–64, 95 S.Ct. 1716, 1721–22, 44 L.Ed.2d 295 (1975)). A federal court, therefore, must rely heavily on the state's wisdom in setting its limitations rules, tolling rules, revival rules, and savings rules when borrowing a state period of limitation for application to a federal cause of action. *See id.* Thus, the savings provision is merely another aspect of state law providing the context for application of remedial rules for § 1983.

And Illinois's savings rule is not inconsistent with federal law. Two of the principal policies embodied in 42 U.S.C. § 1983 are deterrence and compensation. *See Tomanio*, 446 U.S. at 488, 100 S.Ct. at 1722. Illinois's tolling rule definitely does not cut off a plaintiff's right to pursue relief under § 1983. On the contrary, it provides a plaintiff with access to a remedy. Illinois's policy of providing a grace period for claims refiled after the statute of limitations has run, where the period expired during the pendency of the original claim, affords civil rights claims the same protection afforded Illinois personal injury claims. Thus, Illinois's savings provision, which conceivably enlarges a plaintiff's right, is not inconsistent with deterrence or compensation.

Moreover, the United States Supreme Court has rejected defendants' position, indicating that federal interests are advanced by applying savings rules in § 1983 cases. In *Chardon v. Fumero Soto,* a class action was filed under § 1983 in federal court shortly before the statute of limitations expired. *Chardon v. Fumero Soto*, 462 U.S. 650, 651–52, 103 S.Ct. 2611, 2613–14, 77 L.Ed.2d 74 (1983). The district court denied class certification after the statute of limitations had run. *Id.* at 652, 103 S.Ct. at 2614. The plaintiffs then filed individual claims asserting the same violations. *Id.* at 652–53, 103 S.Ct. at 2613–14. In discussing the necessity to apply the Puerto Rican rule that the statute of limitations begins anew, or is revived, after tolling comes to

an end, and thus allows the individuals to file their claims, the Supreme Court stated:

> After class certification is denied, [the federal interest in assuring efficiency and economy of the class-action procedure] is vindicated as long as each unnamed plaintiff is given as much time to intervene or file a separate action as he would have under *a state savings statute applicable to a party whose action has been dismissed for reasons unrelated to the merits....*

*Id.* at 661, 103 S.Ct. at 2618 (emphasis added). Puerto Rican law therefore determined the entire effect that the denial of class certification would have on the § 1983 claims.

The rule garnered from the above discussion is that ¶ 13–217 is not limited to refilings in state court but also applies to refiling in federal court when Illinois law supplies the rules for decision and appertains to actions filed under § 1983. If this case were merely a simple battery case with jurisdiction based on diversity of citizenship, the case would be timely refiled by application of ¶ 13–217. There exists little difference between § 1983 cases and state personal injury cases attended to under diversity jurisdiction in regard to the application of ¶ 13–217. This is so because § 1983 simply provides a remedy for the commission of a tort that takes on constitutional proportions. *See, e.g., Wilson,* 471 U.S. at 278, 105 S.Ct. at 1948 (§ 1983 could be characterized as conferring a general remedy for injuries to personal rights); *Albright v. Oliver,* 975 F.2d 343, 344 (7th Cir.1992) (§ 1983 a constitutional tort statute). If defendants' position were correct, federal courts would suffer the duty of discerning between the "tolling" function of the Illinois provision and the "renewal" or "saving" function of the provision in § 1983 actions. The splitting of the saving statute into component parts is contrary to the spirit of *Wilson, Tomanio,* and *Chardon.*

As a result, the court concludes that Illinois's savings provision is an integral component of a complete limitations policy. *See Tomanio,* 446 U.S. at 488, 100 S.Ct. at

1797 (quoting *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975)). As such, the court applies it for purposes of § 1983 claims refiled in federal court.

The next issue defendants raise is whether the plaintiffs can proceed with the § 1983 claims against the City of Zion after the voluntary dismissal and new filing under ¶ 13–217, although these claims were not asserted in the state court and the statute of limitations has now run. The City of Zion was a party in the original complaint. The Illinois provision provides that the plaintiff "may commence a new action" within a year after the action is voluntarily dismissed. ILL.REV.STAT. ch. 110, ¶ 13–217. After a voluntary dismissal, the litigation is placed into the same posture as if no suit had ever been filed. *Reagan v. Baird,* 140 Ill.App.3d 58, 94 Ill.Dec. 151, 154, 487 N.E.2d 1028, 1031 (1985). The plaintiffs' position finds some support in *Frankenthal v. Grand Trunk Western R. Co.,* 120 Ill.App.3d 409, 76 Ill. Dec. 130, 458 N.E.2d 530 (1983) wherein the Illinois Appellate Court allowed the refiling of a complaint, pursuant to a savings statute, which raised an additional claim against the defendant. *Id.* 76 Ill.Dec. at 137–38, 458 N.E.2d at 537–38. On the other hand, the defendants' position may find some support in *Butterman v. Steiner,* 343 F.2d 519 (7th Cir.1965) wherein the Seventh Circuit determined that a refiling is allowable only for the "same identical cause of action." *Id.* at 519. The *Frankenthal* court, however, rejected the argument that, because the new claim was a separate and distinct claim from the one asserted in the original filing, the plaintiff may not add the new claim, reasoning that both actions grew out of the same transaction or occurrence as the one alleged in the original pleading. *Frankenthal,* 76 Ill.Dec. at 137, 458 N.E.2d at 537. The *Frankenthal* court also relied upon the fact that the trial court could have permitted the plaintiff to amend the complaint, and thus the court determined that the plaintiff should not be penalized for availing herself of the savings provision. *Id.* This court, however, notes that the state court in the present case

refused to allow the plaintiffs to amend their original complaint to add the City of Zion as a defendant, thus precipitating the voluntary dismissal. In spite of all this, the court finds it unnecessary to reach a conclusion on this issue in light of its dismissal of the City of Zion from the § 1983 claims because of the absence of municipal liability.

■■■■ This court has had the opportunity on many occasions to address municipal liability, and many cases exist on this issue. Yet claims filed against municipalities under § 1983 consistently flood the federal courts. It is true that municipalities and their officials are amenable to suit under § 1983 for monetary, declarative, and injunctive relief. *Monell v. Department of Social Servs.*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55, 56 L.Ed.2d 611 (1978). Nevertheless, for an action to lie against a municipal entity, the plaintiff must demonstrate that the entity's policy or custom played a part in the violation of federal law. *Hafer v. Melo,* — U.S. —, —— – ——, 112 S.Ct. 358, 361–62, 116 L.Ed.2d 301 (1991) (citing *Kentucky v. Graham,* 473 U.S. 159, 165–66, 105 S.Ct. 3099, 3104–05, 87 L.Ed.2d 114 (1985) (citing *Monell,* 436 U.S. at 690 n. 55, 694, 98 S.Ct. at 2035 n. 55, 2037)). The existence of a single incident of unconstitutional conduct will not normally suffice to establish policy or custom. *Hossman v. Blunk,* 784 F.2d 793, 796–97 (7th Cir.1986); *Strauss v. City of Chicago,* 760 F.2d 765, 767, 769 (7th Cir.1985). An exception to this generalization, that a single incident does not constitute a policy or custom, exists if the final policymaking authority for the municipality officially orders, sanctions, or approves the particular violation. *Fiorenzo v. Nolan,* 965 F.2d 348, 350–51 (7th Cir.1992); *see Pembaur v. City of Cincinnati,* 475 U.S. 469, 480, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986) (municipal officials possessing final policymaking authority may, by a single decision, subject government to § 1983 liability).

■■■■ Whether one possesses policymaking authority is a question of state law. *St. Louis v. Praprotnik,* 485 U.S. 112, 123, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988). "Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority." *Pembaur,* 475 U.S. at 483, 106 S.Ct. at 1300. The plaintiffs could establish the necessary causal link between municipal policy and the alleged unconstitutional actions if the decision to unconstitutionally enter the home and arrest the plaintiffs, or the decision to use excessive force on the plaintiffs, was "a deliberate choice ... made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Sims v. Mulcahy,* 902 F.2d 524, 542 (7th Cir.1990) (quoting *Zook v. Brown,* 865 F.2d 887, 895 (7th Cir.1989)). Defendants have amply pointed out that the City of Zion's Police and Fire Commission is the final policymaking body with respect to the training of officers and the use of force. Thus, in order to survive the motion to dismiss, plaintiffs cannot rely on their allegation that defendant E.M. Bridges is a policymaker because he is "responsible for training and supervising officers." E.M. Bridges holds the rank of Police Sergeant with the Zion Police Department (although the complaint only alleges he is a "police officer"). E.M. Bridges is merely a subordinate police officer not invested with any final policymaking authority. In light of Seventh Circuit case law, a city police sergeant cannot be a high-ranking policymaker such to impose liability on the city for his individual actions. *See id.* (police sergeant is not invested with policymaking authority). To hold that a municipality officially adopts or promulgates the actions carried out by police sergeants would stretch the reach of *Pembaur* too far and would expose numerous municipal organizations to baseless liability claims. Because the complaint does not allege any other ground to establish policy or custom (i.e., formal official policy, departmental practice, persistent and widespread pattern of incidents), the motion to dismiss the § 1983 claims against the City of Zion is granted.

■ Although the court has determined that this case can be refiled pursuant to ILL.REV.STAT. ch. 110, ¶ 13–217, the court nevertheless grants defendants' motion to dismiss, and grants plaintiffs leave to file an amended complaint, for an entirely different reason. From examination of the complaint it becomes apparent that the complaint contains mere conclusory allegations. This issue was raised briefly in defendants' motion regarding the City of Zion and the conclusory allegations of policy or custom. The court finds the issue sufficiently raised to merit its attention.

■ On a motion to dismiss, the court accepts all well-pleaded factual allegations as true, *Johnson v. Martin*, 943 F.2d 15, 16 (7th Cir.1991), as well as all reasonable inferences drawn from those allegations, *Nelson v. Monroe Regional Medical Center*, 925 F.2d 1555, 1558 (7th Cir.), *cert. dismissed,* —— U.S. ——, 112 S.Ct. 285, 116 L.Ed.2d 236 (1991). Although mere vagueness or lack of detail alone does not constitute sufficient grounds to dismiss a complaint, the absence of facts to support a claim renders the allegations mere legal conclusions subject to dismissal. *Strauss,* 760 F.2d at 767–68. Accordingly, a plaintiff will not avoid dismissal if the complaint merely recites bare legal conclusions. *Sutliff, Inc. v. Donovan Cos.,* 727 F.2d 648, 654 (7th Cir.1984).

The court concludes that the plaintiffs' complaint lacks any factual allegations and only recites legal conclusions. The complaint alleges that the plaintiffs were arrested "without a warrant or probable cause." But not all warrantless arrests are constitutional violations, and that the arrest was without probable cause is a legal conclusion. Plaintiffs fail to allege anything beyond that the arrest was without probable cause, that "the arrest was unjustified," or that the plaintiffs were "beat," without stating any facts surrounding the situation (i.e., that plaintiffs were not resisting arrest or that the defendants arrested the wrong people). The legal sufficiency of plaintiffs' claims will certainly depend upon the facts and circumstances surrounding the incidents. Those facts are not alleged even though the litigation has been in existence for nearly two years.

■ Accordingly, plaintiff's bald assertion of the absence of probable cause and his subjective belief that none existed for his arrest are not sufficient. Whether or not probable cause exists involves "a practical, common-sense decision whether, given all the circumstances set forth ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). It is improper to focus on isolated aspects of a probable cause showing, artificially separating those aspects from other facts presented to the magistrate. *Cf. id.* at 234–35, 103 S.Ct. at 2330–31. As in many evidentiary questions, the whole of a probable cause showing often is greater than the sum of its parts. Even seemingly innocent behavior might arouse suspicion in light of other circumstances. *See id.* at 243–44 n. 13, 103 S.Ct. at 2334–35 n. 13. The inquiry into the existence of probable cause raises questions of "probabilities ... the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949); *see also United States v. Watson,* 587 F.2d 365, 368 (7th Cir.1978), *cert. denied,* 439 U.S. 1132, 99 S.Ct. 1055, 59 L.Ed.2d 95 (1979). The *Brinegar* court recognized the ambiguity of situations with which the police are often confronted, and consequently noted that the rule of probable cause permits mistakes reasonably made. *Brinegar,* 338 U.S. at 176, 69 S.Ct. at 1311. Probable cause requires more than bare suspicion, but need not be based on evidence sufficient to support a conviction, nor even a showing that the officer's belief is more likely true than false. *United States v. McDonald,* 723 F.2d 1288, 1295 (7th Cir. 1983), *cert. denied,* 466 U.S. 977, 104 S.Ct. 2360, 80 L.Ed.2d 831 (1984). Discovery has surely given the plaintiffs some indication of the facts surrounding defendants' actions. As currently pleaded, the complaint does not comply with federal pleading stan-

dards, no matter how liberal these standards are. In the interest of substantial justice, *see* Fed.R.Civ.P. 8(f), the court grant plaintiffs leave to file an amended complaint in order for the plaintiffs to purge their complaint of conclusory allegations.

## CONCLUSION

For the reasons stated above, the court grants the motion pursuant to Fed.R.Civ.P. 12(b)(6) for failing to state a claim. Plaintiffs are granted leave to file an amended complaint within fourteen days. Plaintiffs are not foreclosed by the statute of limitations to bring this suit; however, plaintiffs may not add § 1983 claims against the City of Zion.

IT IS SO ORDERED.